414 So.2d 360 (1982)
STATE of Louisiana
v.
William TUCKSON.
No. 81-KA-1563.
Supreme Court of Louisiana.
May 17, 1982.
*361 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Patrick Leitz and Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Robert T. Garrity, Jr., New Orleans, and Joseph L. Montgomery, Metairie, Indigent Defender Board, for defendant-appellant.
SAVOIE, Justice Ad Hoc.[*]
Defendant, William Tuckson, was charged by a Jefferson Parish Grand Jury indictment with the crime of first degree murder, a violation of La.R.S. 14:30. On December 8-9, 1980, he was tried before a twelve person jury which found him guilty as charged. Thereafter, the sentencing hearing commenced and the jury recommended life imprisonment without benefit of parole, probation or suspension of sentence. Defendant now appeals on the basis of two assignments of error, although not in the record, argued in the brief.
In the early morning hours of July 13, 1980, defendant broke into a truck parked about two blocks from the apartment of his girl friend's mother. He popped a small side window with a screw driver to unlock the door.
Defendant reached under the seat of the truck and found a pistol but did not check whether it was loaded or not. Defendant stole a ring, an eight track tape and a C.B. radio which he loosened with pliers. While still in the truck, he heard someone holler. Defendant jumped from the truck as James Johnson entered the truck. He ran around the front of the truck to scare Johnson. He saw Johnson leaning over as if reaching under the seat at which time defendant fired into the front driver's window of the truck. After shooting the gun, defendant picked up the goods which he had removed from the truck and ran to his girl friend's mother's apartment. Once there, he undressed and fell asleep on the couch.
After an on-scene investigation, the police learned that William Tuckson had been seen running from the area shortly after the gun shot was heard. The police were led to the girl friend's mother's apartment where they knocked on the door with a normal rap. They were freely admitted to the apartment where they found defendant sleeping on the couch. He was advised that he was under investigation for the murder of Johnson and orally recited his rights. After defendant was handcuffed, he was taken to police headquarters, where he signed a waiver of rights form, declined the presence of a lawyer, and gave a taped inculpatory statement.
After defendant was removed from the apartment, the police obtained permission from the lessee, Gwendolyn Walker, to search. They retrieved the .38 caliber pistol, the screw driver, the pliers, and a man's ring. Defendant's clothing, which he put on to go to the police station, was later obtained as evidence.
ASSIGNMENT OF ERROR NO. 1
Trial court erred in denying defendant's motion to suppress evidence.
Defendant objects to the trial court's denial of defendant's motion to suppress the evidence gathered from his girl friend's mother's apartment when he was arrested on July 13, 1980. According to Officer Patrick J. Rooney's testimony at the motion to suppress, he and several other officers went to Gwendolyn Walker's apartment looking for defendant. Their investigation had revealed that defendant was seen fleeing the area shortly after the shot was heard and that he was currently staying with his girl friend's mother, Ms. Walker. The police knocked on the apartment door and were allowed to enter. They found Tuckson asleep on the sofa and did an immediate search of the area around the sofa where they found beige slacks and a screw driver.
*362 After the defendant was handcuffed and removed from the apartment, the police obtained a consent to search the apartment from Ms. Walker. Pursuant to this search, the .38 caliber pistol and a pliers were found under the coffee table. Ms. Walker's testimony that the police entered the apartment with guns drawn conflicts with Officer Rooney's testimony, that the police had not drawn their guns on entering.
If Ms. Walker's testimony is considered more credible than Officer Rooney's testimony regarding the drawn guns, the scene in the apartment was threatening to her, perhaps affecting the voluntariness of the consent search. Nevertheless, this Court restated in State v. Robinson, 386 So.2d 1374 (La.1980) that whether a consent to search was voluntary is a question of fact to be determined by an analysis of all the circumstances of each case. State v. Wilson, 363 So.2d 445 (La.1978). Because consent is a question of fact involving the credibility of the witnesses, the determination of the trial judge, who had an opportunity to observe and hear the witnesses, is given great weight on review. State v. Dunbar, 356 So.2d 956 (La.1978), Robinson, supra at 1376.
The trial judge chose to believe the police officer's testimony that he did not have his gun drawn and that he did obtain permission to search the apartment without threats or coercion. A review of the record does not show that Ms. Walker was intimidated or threatened in any way, only a conflict over whether guns were drawn or not. There is no showing that the trial judge abused his discretion in concluding that the consent to search was freely and voluntarily given. Thus, he did not err in overruling defendant's motion to suppress the evidence. State v. Robinson, 386 So.2d 1374 (La.1980).
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 2
Trial court erred in denying defendant's motion for a new trial as verdict contrary to law and evidence.
First degree murder is a murder committed during the perpetration of certain stipulated felonies, one of which is aggravated burglary. In order to show that Tuckson killed Johnson during the perpetration of an aggravated burglary, it was necessary for the State to prove, among other things, the "unauthorized entering of a ... movable (the van) where a person is present ..." (L.S.A.-R.S. 14:60)
It is undisputed that at the time Tuckson broke into the van, there was no one else inside it. Indeed, it appears relatively certain that there was never a time when Tuckson and Johnson were together inside the van. Tuckson testified, as follows, in that regard:
"Well, when I was in the truck, and he hollered, and I hopped out."
Q. You were already outside the truck when he got in the truck?
A. Yes, sir.
Clearly, in order for there to have been an aggravated burglary of this van, and thus, a first degree murder of Mr. Johnson, it must be shown that the jury could rationally find from the evidence that (beyond a reasonable doubt), Tuckson made an unauthorized entry of the van, corresponding in time to the "presence" of the victim or some other person. The statutory language is clear and unambiguous and does not admit of the interpretation that an aggravated burglary of a vehicle is committed when an unoccupied vehicle is entered by the criminal at one moment and the owner or someone else comes along later.[1]
State v. Goods, 403 So.2d 1205, 1209 (La. 1981):
"... L.S.A.-R.S. 14:60 ... requires that the State prove, beyond a reasonable doubt, that a person was present within *363 the burglarized structure, watercraft, or movable as one of the essential elements of aggravated burglary."
In this case, the defendant was surprised during the commission of a felony, but it was simple burglary, not one of the felonies listed in the first degree murder statute.
Since he did not commit a homicide "when ... engaged in the perpetration of... aggravated burglary", Tuckson's conviction of first degree murder must be set aside.
The elements of first degree murder which must be found by the jury to have been proven beyond a reasonable doubt are: 1) the commission of a homicide, 2) by the defendant, 3) who had a specific intent to kill or inflict great harm, 4) in the course of commission of an aggravated burglary.[2] Our review, negating the jury finding on element 4) reveals no reason to question the findings on the first three elements. As to each of these elements, there is sufficient evidence upon which the jury could reasonably have found guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Harveston, 389 So.2d 63 (La.1980).
The commission of a homicide where there is a specific intent to kill or inflict great bodily harm constitutes the crime of second degree murder,[3] and second degree murder is a responsive verdict to an indictment of first degree murder.[4] That being the case, it is unnecessary to remand this case for a new trial.
State v. Byrd, 385 So.2d 248 & 251 (La. 1980).
"Since all the elements of the lesser and included offense ... have been proved beyond a reasonable doubt, this court should not strike down all of those adequately supported findings merely because the evidence did not reasonably support the conclusion that an additional element also existed."
Nor will it be necessary to re-sentence in this case, since the mandatory sentence for second degree murder is the same as the sentence that has already been entered.
The conviction of first degree murder is set aside. This matter is remanded for entry of a judgment of guilty of second degree murder.
CONVICTION OF FIRST DEGREE MURDER SET ASIDE, REMANDED FOR ENTRY OF GUILTY OF SECOND DEGREE MURDER.
THE SENTENCE IS AFFIRMED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
In previous cases where the majority has found no evidence of an essential element of the crime for which defendant was charged and convicted, I have dissented from the order remanding the case for entry of a judgment of guilty to a responsive verdict. Rather, I considered that defendant should have been discharged. However, in view of the majority's adherence to this view, I feel constrained to concur in the result.
NOTES
[*] Judges Shortess, Carter and Savoie of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon, and Associate Justices Calogero, Marcus and Dennis.
[1] See State v. Goode, 403 So.2d 1205, 1209 (La.1981) where we said "... there is no doubt that no one was present in the movable at the time defendant burglarized it. Thus, lacking this essential element, the State could not prove the defendant was guilty of aggravated burglary."
[2] The relevant portion of the first degree murder statute, La.R.S. 14:30, reads:

"First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;"
[3] The relevant portion of La.R.S. 14:30.1:

"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;"
[4] Article 814 of the Code of Criminal Procedure provides, among other things:

The only responsive verdicts which may be rendered where the indictment charges the following offenses are:
1. First Degree Murder
2. Guilty
3. Guilty of second degree murder
4. Guilty of manslaughter
5. Not guilty"