427 So.2d 428 (1982)
STATE of Louisiana
v.
Willie A. THOMAS.
No. 81-KA-1268.
Supreme Court of Louisiana.
September 7, 1982.
On Rehearing February 23, 1983.
*430 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Asst. Dist. Atty., for plaintiff-appellee.
Helen G. Roberts, Gravel, Robertson & Brady, Alexandria, for defendant-appellant.
MARCUS, Justice.[*]
Willie A. Thomas was indicted by the grand jury for the first degree murder *431 of Elijah Dickson on July 11, 1979, in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that defendant be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. The court sentenced defendant in accordance with the recommendation of the jury. On appeal, defendant relies on one assignment of error for reversal of his conviction and sentence.[1]
Defendant contends the state failed to prove an essential element of the crime of first degree murder.
La.R.S. 14:30 provides in pertinent part:
First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.
The record reflects that on the afternoon of July 11, 1979, Deputy Kenneth Bogle was patrolling in his car when he received a call that there had been a disturbance at defendant's house. While en route to investigate, he received another call that there had been a shooting at the same location. As the officer pulled into defendant's driveway, he saw Elijah Dickson's body lying in the door of Dickson's house which was located about 65 to 75 yards behind defendant's house. Deputy Bogle then observed defendant emerge from a little patch of woods behind Dickson's house carrying a rifle. The officer got out of his car and ordered defendant to drop the rifle. Defendant ignored him and continued walking with the rifle in his hand. Deputy Bogle followed him to the door of Dickson's house where defendant looked at Dickson's body and stated, "You son of a bitch I told you I would get you." At that time, Deputy Bogle took the rifle away from defendant and told him to go back to his house while he investigated. Defendant returned about five minutes later and kept trying to tell Deputy Bogle about what had happened. At this time, Deputy Bogle placed defendant under arrest and advised him of his rights. Defendant told the officer that Dickson had fired at him and that he had returned his fire. He also showed Deputy Bogle an area in front of his house between his truck and his boat from which he had fired the shot. The physical evidence revealed that one shot had been fired from the rifle taken from defendant but no physical evidence was found indicating that Dickson had fired any shots.
Charles Barnes and Mashack Horton were driving by Dickson's house shortly before the shooting when Dickson stopped them. Barnes got out of Horton's truck to see what Dickson wanted. Dickson told Barnes that he wanted Barnes to get something for him in Keatchie. Barnes was standing on the ground and Dickson was standing "up in the door." As Dickson reached into his pocket to get some money, both Barnes and Horton heard a gunshot. Dickson stated, "I'm shot," and fell to the floor. Barnes and Horton "took off" to call *432 the police. As they were driving away, they saw defendant with a rifle in his hand, squatting between his boat and his truck. Barnes and Horton had been at Dickson's house for about four minutes before the shooting occurred and never saw a gun in Dickson's hand during this time.
An autopsy later revealed that Dickson died as a result of a single bullet wound to the chest. The cause of death was loss of blood in the right side of the chest.
While conceding that the state proved that defendant had the specific intent to kill or to inflict great bodily harm, defendant argues that there was no evidence of the additional element required for a conviction of first degree murder. We agree. La.R.S. 14:30 defines first degree murder as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm under certain circumstances enumerated in the statute. Hence, in order to convict an offender under this statute, the state must prove one of the enumerated circumstances in addition to specific intent to kill or to inflict great bodily harm. This statute, as presently written, became effective on June 29, 1979,[2] twelve days before the instant crime was committed (July 11, 1979). Prior to June 29, 1979, the first degree murder statute provided: "First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." Defendant in the instant case was mistakenly prosecuted under the first degree murder statute existing prior to June 29, 1979. Therefore, in the absence of proof of one of the circumstances enumerated in the applicable version of La.R.S. 14:30, we would be required to reverse his conviction for first degree murder. Our review of the record reveals no evidence of any of the enumerated circumstances.
Nonetheless, when the evidence supports a conviction on a lesser and included offense which is a legislatively authorized responsive verdict, ordering entry of a judgment of guilty of the lesser and included offense is appropriate. State v. Byrd, 385 So.2d 248 (La.1980). Second degree murder is the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1. Moreover, second degree murder is a legislatively authorized responsive verdict to first degree murder. La.Code Crim.P. art. 814(A)(1). We consider that in the instant case all the elements of the lesser and included offense of second degree murder have been proved beyond a reasonable doubt. Accordingly, the conviction of first degree murder will be set aside and the case remanded to the trial court with instructions to enter a judgment of guilty of second degree murder.
Since second degree murder requires a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, which is the same sentence as previously imposed in this case, we do not consider it necessary that defendant be resentenced. Hence, defendant's sentence will be affirmed. State v. Tuckson, 414 So.2d 360 (La.1982).

DECREE
For the reasons assigned, defendant's conviction of first degree murder is set aside and the case is remanded for entry of judgment of guilty of second degree murder. Defendant's sentence is affirmed.

On Rehearing
DENNIS, Justice.
On rehearing, defendant urges us to reverse his conviction and sentence and remand the case for a new trial because the district court erroneously conducted the trial and instructed the jury on the basis of a superseded first degree murder statute. We reaffirm our original decision. The alleged irregularities or errors cannot be availed of on appeal because they were not objected to at the time of occurrence, La.C. Cr.P. art. 841, and are not discoverable by a mere inspection of the pleadings and proceedings *433 and without inspection of the evidence. La.C.Cr.P. art. 920. Unlike the federal rules of criminal procedure, our statutory law does not contain an exception to the contemporaneous objection rule which authorizes appellate review of the record in a criminal case for plain error. See F.R. Cr.P. 52(b). In the absence of a showing that our statutory rules fail to afford adequate remedy by due process of law without unreasonable delay, there is no justification for creation of a generally applicable plain error rule by this court.
Our rule requiring a contemporaneous objection to preserve a criminal trial error for review conforms generally with Rule 51, Federal Rules of Criminal Procedure. Although a bill of exceptions is unnecessary, an error cannot be raised after verdict unless it was objected to at the time of occurrence. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action he desires the court to take, or of his objections to the action of the court, and the grounds therefor. The requirement of an objection does not apply to the court's ruling on any written motion. La.C.Cr.P. art. 841. Moreover, a party is not prejudiced by lack of an objection if he had no opportunity to object. Id. Official Revision Comment (a).
The contemporaneous objection rule has two purposes: (1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection. State v. Morris, 82-KA-0549, rendered this day; State v. Dupre, 339 So.2d 10 (La.1976); State v. Marcell, 320 So.2d 195 (La.1975).
Our rules of criminal procedure do not contain a provision such as Federal Rule of Criminal Procedure 52(b) which, as an exception to the contemporaneous objection requirement, authorizes appellate review for plain error. However, there are exceptions of limited application. Certain rights are so basic that the Code of Criminal Procedure provides that they may be raised for the first time in arrest of judgment, Art. 859; in an application for a writ of habeas corpus, Art. 362; or in a motion for a new trial, Art. 851. Some errors, such as a fatally defective indictment, can be urged for the first time on appeal as an error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. La.C.Cr.P. art. 920(2). See La.C.Cr.P. art. 841, Off.Rev. Com. (b).
Every person is guaranteed an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights. La. Const.1974, art. I § 2. Accordingly, if our statutory rules do not afford litigants an adequate remedy by due process of law without unreasonable delay, this court is empowered by the guarantee of art. 1 § 22, as well as its supervisory jurisdiction, rule-making authority, and inherent judicial power, La. Const.1974, art. V, §§ 1, 5; and art. II, §§ 1, 2, to fashion rules which provide such a remedy. Defendant has failed to demonstrate, however, that the remedies provided by our statutory scheme are deficient or necessitate this court's formulation of a plain error rule of general application.
Moreover, the alleged errors in the present case do not justify the creation of another special exception to the contemporaneous objection requirement. Because the penalty of death is qualitatively different from any other sentence, capital cases receive heightened scrutiny from this court and we conduct an independent review, regardless of the failure of defense counsel to object to possible error, to determine whether any improper factors contributed to the jury's recommendation of the death penalty. State v. Sonnier, 379 So.2d 1336, 1371 (La.1980) (on rehearing); See, State v. David, 425 So.2d 1241 (La.1983), State v. Watson, 423 So.2d 1130 (La.1982), 82-KA-2227; See also, State v. Culberth, 390 So.2d 847 (La.1980). Because a conviction based on a record devoid of evidence of the crime *434 charged or an essential element thereof is so patently unfair and a denial of due process, it is essential that the error be corrected expeditiously to prevent imprisonment or stigmatization of a legally innocent person. See, State v. Raymo, 419 So.2d 858 (La.1982); State v. Morris, 397 So.2d 1237 (La.1981) (on rehearing); State v. Peoples, 383 So.2d 1006 (La.1980). The alleged errors in the present case are plainly not as radical as a complete failure of proof of an essential element of crime or as pernicious as an error in the foundation for a death sentence.
Although the idea of plain error is a loosely defined concept, the requirement that the defendant must have suffered substantial prejudice to obtain relief seems to run through every formulation. In an early case, the United States Supreme Court described the concept of plain error as errors which are "obvious, or [which] otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). However, courts have given "plain error" various meanings including "error both obvious and substantial," "serious and manifest errors," and "grave errors which seriously affect substantial rights of the accused." See Wright, Federal Practice and Procedure, Criminal 2d, § 856 at 336 and authorities cited therein; See also, Moore's Federal Practice, Rules of Criminal Procedure, § 52.02[2]. Some courts have adopted a stricter approach and utilize the notion of plain error only when it is necessary to prevent a clear miscarriage of justice. See, e.g., United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981).
Consequently, it is unlikely that plain error review in the present case, even if granted, would warrant relief because the defendant has failed to demonstrate that he was substantially prejudiced by the claimed irregularities.
The defendant asserts that the failure of the trial court to correctly instruct the jury on first and second degree murder may have caused it to return a murder instead of a manslaughter verdict. The jury was correctly instructed and told that manslaughter was a permissible verdict, however. If the jurors had been convinced beyond a reasonable doubt that the homicide was committed without specific intent, they were aware that a manslaughter verdict could have been returned. We see no reason to believe that the jury's murder verdict was based on anything other than its conviction that the state had proved a specific intent slaying, and its finding in this regard is supported by the evidence.
The defendant also contends that the case should not have been tried as a capital murder case. He alleges that several jurors were therefore erroneously excluded from service because of their voiced objections to the death penalty, and, hence, that the jury finally empaneled was more likely to convict. Even assuming that the case should not have been tried as a first degree murder case, we decline to reverse the defendant's conviction. Certainly, the argument has been made that an improperly "death-qualified" jury is more likely to vote to convict. Also, some have argued that such juries may deprive a defendant of a jury drawn from a cross section of the community. See, e.g., State v. Miles, 339 So.2d 735, 740-41 (La.1976) (Tate, J., concurring). However, studies conducted on the voting tendencies of such juries have been tentative and fragmentary. See Witherspoon v. Illinois, 391 U.S. 510, 517, 88 S.Ct. 1770, 1774, 20 L.Ed.2d 776 (1968); State v. David, supra. And the defendant has made no showing whatsoever that this alleged impropriety deprived him of a jury drawn from a fair cross section of the community. Therefore, while the door remains open to future arguments based on empirical evidence, we decline to reverse this conviction on an unproven assertion that a "death qualified" jury is more apt to convict than one including persons unalterably opposed to the death penalty. State v. David, supra, at n. 1.
The defendant was afforded due process of law in that he was given adequate notice of the crime for which he was *435 accused and tried. No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in all courts, state and federal. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); State v. Booker, 385 So.2d 1186 (La.1980). The defendant was notified of the charge against him by the short form indictment charging him with first degree murder. He also had notice that he would have to defend himself against second degree murder and manslaughter, since each was a lesser included offense. La.R.S. 14:5, La.C.Cr.P. art. 814(A)(1). The evidence of record indicates that the only contested issue at trial was whether the defendant could have formulated the specific intent to kill at the time of the offense. Defendant was fully informed of this issue by the charge and was obviously prepared to defend against it, considering the extensive portion of the record devoted to the defendant's claims of insanity and intoxication. Therefore, for the jury to find the defendant guilty of the elements of second degree murder and for this court to enter a judgment accordingly, does not deprive this defendant of procedural due process.
In State v. Williamson, 389 So.2d 1328 (La.1980), we allowed review of an erroneous jury instruction despite the defendant's failure to object at trial. We express no opinion on whether this court will again grant review under the unique facts of Williamson, but leave that as an open question. However, Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. This court has not created or recognized a plain error rule of general application.
Our original opinion and decree are affirmed.

ORIGINAL DECISION AFFIRMED.
LEMMON, J., concurs and assigns reasons.
BLANCHE, J., dissents and would grant defendant a new trial.
CALOGERO, J., dissents and will assign reasons.
LEMMON, Justice, concurring.
This case is vastly different from State v. Williamson, 389 So.2d 1328 (La.1980).
In Williamson, the defendant was charged with attempted first degree murder; the judge erroneously instructed the jury (without objection) that attempted first degree murder required only a specific intent to kill (when legislation, effective shortly before the offense, added the requirement of the existence of an enumerated aggravated circumstance) and that the responsive verdict of attempted second degree murder required only a finding of attempted murder during the commission of certain felonies; and the jury returned a responsive verdict which made absolutely no sense under the evidence and the instructions. I voted to reverse the conviction, despite the lack of objection to an error which was contributed to by the judge, the prosecutor and the defense attorney, because the jury instruction (erroneously stating the essential elements of the pertinent crimes) was so prejudicial as to offend basic fairness concepts. While I noted that few jury instructions are so prejudicial as to constitute plain error, this instruction clearly misled the jury into a verdict so illogical and inexplainable that this court could not affirm the conviction simply because the jury reached the right result on the wrong instructions. While the verdict would have been justified under the evidence and the new law (of which the jury was unaware), the judge never outlined to the jury the elements of any crime by any name which fit both the facts and the verdict which was returned.
In the present case, the defendant was charged with first degree murder; the judge's instructions defined first degree murder by listing all of the essential elements of second degree murder; the evidence *436 supported a finding of all of the essential elements of first degree murder, as defined by the judge; and the jury returned a verdict of guilty as charged (of first degree murder, as defined). That verdict (unlike the verdict in Williamson) made sense on the instructions and the evidence, and the jury simply returned a verdict using the wrong name of the crime (significantly, the same wrong name that was submitted by the judge). Unlike Williamson, there was no error in the fundamental definition of the crime; the only error was in the name of the correctly defined crime of which defendant was found guilty by sufficient evidence.[1]
On original hearing, we simply "corrected" the verdict to supply the correct name for the crime on which the jury was correctly charged and which the evidence proved. Because the defendant suffered no prejudice, our original judgment was correct.
CALOGERO, Justice, dissenting.
Defendant was charged and tried for the capital offense of first degree murder, simply specific intent killing, even though the first degree and second degree murder statutes had been changed twelve days before the crime to restrict first degree murder to specific intent killing during the perpetration or attempted perpetration of designated felonies, or to three other limited instances,[1] and to define second degree murder as specific intent killing or felony murder. At the time that the crime was committed, defendant could properly be charged for specific intent killing under only the second degree murder statute.
Had Thomas been charged and tried under the proper law, he would have been charged with the non-capital crime of second degree murder; the State would not have been able to exclude from the jury persons with conscientious scruples who would automatically vote against the imposition of capital punishment. This defendant, in my view, was thus seriously prejudiced. This is a case of first impression; it is not the close Witherspoon issue in which a defendant claims that even with the challenges properly applied in a capital case, he has been denied a jury from a cross-section of the community.
Defendant's contention relating to the composition of the jury goes one step further than the Witherspoon argument. Defendant contends that the State, in a case in which challenges were not proper, was permitted to successfully challenge for cause several prospective jurors on the basis that they could not impose the death penalty. The majority opinion discounts defendant's assertion because of a lack of empirical data concerning the voting tendencies of a "death-qualified" jury. Empirical evidence or not, the State received the benefit of a "death-qualified" jury in a case in which they were not so entitled. Persons with conscientious scruples against imposing the death penalty should not have been excluded. That constituted error. In those circumstances, I would declare that the State must produce the "empirical data" to prove that a "death-qualified" jury was not more likely to convict. Absent such a showing, such error can hardly be deemed harmless.
Concerning the other major issue in the case, I agree that this case is distinguishable from Williamson for the reasons expressed *437 by Justice Lemmon in his concurring opinion. The majority author's observations reserving a decision as to whether this Court would "again grant review under the unique facts of Williamson " is unnecessary to the opinion. There is no need to cast doubt on the Williamson holding. Due process required reversal there, notwithstanding the lack of an objection to the jury charge, as Justice Lemmon noted, "because the jury instruction (erroneously stating the essential elements of the pertinent crimes) was so prejudicial as to offend basic fairness concepts."
For the foregoing reasons, I respectfully dissent.
NOTES
[*] Judges Charles R. Ward, David R.M. Williams and William H. Byrnes of the Court of Appeal, Fourth Circuit, participated in this opinion as associate justices, ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Defendant designated three errors to be urged on appeal. However, he neither briefed nor argued two of these assigned errors; therefore, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La. 1976); State v. Carlisle, 315 So.2d 675 (La. 1975).
[2] La. Acts 1979, No. 74, § 1, eff. June 29, 1979.
[1] Except for the wrong name, the jury effectively was charged correctly and returned a verdict supported by the evidence, and there was a crime in the statutes which fit both the facts and the verdict. Defendant could not have been prejudiced, especially since the jury was correctly charged as to the next lesser responsive crime (manslaughter) and chose not to return that responsive verdict.
[1] The three instances enumerated in La.R.S. 14:30(2), (3) and (4) relate to the killing of a human being:

(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.