719 So.2d 592 (1998)
STATE of Louisiana
v.
Dwayne LeBLANC.
No. 97-KA-1388.
Court of Appeal of Louisiana, Fourth Circuit.
September 23, 1998.
*593 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Plaintiff-Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant-Appellant.
Before KLEES, LOBRANO and MURRAY, JJ.
KLEES, Judge.
Defendant, Dwayne LeBlanc, was charged by grand jury indictment on January 12, 1995, with one count of second degree murder, a violation of La. R.S. 14:30.1, and one count of attempted first degree murder of a police officer, a violation of La. R.S. 14:(27)30. At his arraignment on January 17, 1995, defendant pleaded not guilty. On June 13, 1996, the trial court denied defendant's motion to suppress the identification. Following a trial by a twelve-person jury, defendant was found guilty as charged on both counts. On March 21, 1997, defendant was sentenced, as to count one, to life at hard labor; as to count two, to fifty years at hard labor, with the sentence to be served concurrently with the sentence in count one. Both sentences were ordered to be served without benefit of probation, parole or suspension of sentence. The trial court denied defendant's motion to reconsider the sentence imposed as to count two, and granted defendant's motion for appeal.

FACTS
New Orleans Police Department Detective Norbert Zenon testified that, on the night of August 27, 1994, he and his partner, Detective Michael Mims, working plainclothes in the homicide division, received a call of a homicide at the corner of North Villere and Tupelo Streets in New Orleans. After going to a Chalmette hospital, where the victim, Richard Borden, had been taken, the two detectives drove to the area of the crime accompanied by a witness to the murder. As the detectives drove down Tupelo Street in their unmarked police car, with Det. Mims driving, the witness saw the defendant and said, "that's him." Det. Zenon testified that, at that point, the defendant drew a chrome revolver from his waistband and started shooting at the officers, who were approximately fifteen to twenty feet away, still in their vehicle. Det. Zenon said the officers exited the vehicle and he returned fire, shooting three times, before taking off after the defendant, who was running down Tupelo Street. Det. Mims called out to Det. Zenon that he had been shot. Det. Zenon broke off his chase and transported Det. Mims to the hospital. Det. Zenon said he later identified the defendant from a photographic lineup.
Det. Michael Mims testified that as he, Det. Zenon, and Lofton Fairchild, the witness, drove up to the scene of Richard Borden's murder, Fairchild pointed out the defendant. Det. Mims said his partner said to him, "Mike, he has a gun." Det. Mims said he saw the defendant reach for a gun. Det. Mims stated that, at that time, he was "almost right in front of [the defendant]." This statement by Det. Mims indicates that the driver's side of the police vehicle was closest to the porch where the defendant was sitting. Det. Mims said he put the vehicle in park and, as he was getting out, the defendant *594 started shooting at them with a small chrome revolver. Det. Mims said the defendant fired four to five shots at them. Det. Mims said he later picked the defendant's photograph out of a photo lineup.
Det. Anthony Smalls testified that a witness to both the shooting of Borden and of Det. Mims, Geraldine Jones, identified the defendant as the person involved in both shootings. Det. Smalls testified that a second witness, Lofton Fairchild, identified the defendant as the person who committed both crimes.
Lofton Fairchild, murder victim Richard Borden's uncle, testified that the defendant shot Borden through a window of Fairchild's truck with a silver-plated revolver. Fairchild also testified that, when he returned to the scene of the shooting with Dets. Zenon and Mims, the defendant was sitting on the steps of a residence. Fairchild said he pointed out the defendant to the detectives and the defendant got up, reached for a silver-plated gun, and "started at us and running at the same time." Fairchild said the defendant fired five or six shots.
Dr. Richard Tracey, an assistant coroner for the parish of Orleans, testified that Richard Borden's death was caused by a single gunshot wound.
Carolyn Sims testified that she heard gunfire around 10:00 p.m. on August 27, 1994. Following the gunfire, Sims looked out of her window and observed the defendant, whom she knew as "Twin," running. Later that evening, as she was talking with her neighbor, Ms. Jones, Sims saw a "Ford" pass by. Sims then observed the shootout between Dets. Zenon and Mims and the defendant. Sims said she later picked the defendant's photograph out of a group of photographs shown to her by police.
Orleans Parish Criminal Sheriff's Office Lt. Ronald John Joseph, Sr., custodian of records for Orleans Parish Prison, testified that the defendant's twin brother, Dwight LeBlanc, was incarcerated from August 23, 1993 to October 24, 1995, when he was transferred to the Department of Corrections.
Leonard LeBlanc, the defendant's brother and a resident of Long Beach, California, testified that he, his wife, and his four children left New Orleans on August 17, 1994, after a visit, to drive back to Long Beach, arriving there on August 19th or 20th. Leonard LeBlanc testified that the defendant drove to California with them and stayed at his residence with him for approximately four months, until arrested for the instant offenses. LeBlanc said the defendant did not leave Long Beach to return to New Orleans during that period.
Willie Mae Baker, Leonard LeBlanc's mother-in-law and a resident of Los Angeles, California, testified that she came to New Orleans in August 1994 with her daughter, her son-in-law Leonard and her four grandchildren. She said the others left to return to California on either August 16th or 17th, and she stayed in New Orleans. Baker said that she thought the defendant accompanied the others on their return trip to California, but said she did not see them when they left. Baker said she returned to California on August 23, 1994. She said that between the time she returned and the end of August, she saw the defendant with her son-in-law. In fact, Baker said the defendant was in the car when her daughter and son-in-law came to pick her up at the airport. Baker also said she saw the defendant in California in the company of her son-in-law during the months following August.
There was no evidence that the murder weapon, which apparently was the same weapon defendant used to shoot Det. Mims, was ever recovered.

ERRORS PATENT
A review of the record reveals one error patent. The trial court ordered that the sentence imposed for defendant's conviction for attempted first degree murder be served without benefit of parole, probation or suspension of sentence. The offense occurred on August 27, 1994. At the time the offense was committed, La. R.S. 14:27(D)(1), the attempt statute, did not provide that the sentence for attempted first-degree be served without benefit of parole, probation or suspension of sentence. The statute was amended by Acts 1995, No. 988, § 1, to add those restrictions. Thus, that portion of the sentence for attempted first degree murder *595 stipulating that it be served without benefit of parole, probation or suspension of sentence should be deleted.

ASSIGNMENT OF ERROR
In defendant's sole assignment of error, he argues that the trial court erred in charging the jury that it could convict the defendant of attempted first degree murder upon proof that the defendant specifically intended either to kill Det. Mims or inflict great bodily harm upon him.
The trial court charged the jury that:
Thus in order to convict the defendant of attempted first degree murder you must find that the defendant attempted to kill detective Michael Mims and that the defendant had a specific intent to kill or to inflict great bodily harm upon Detective Mims and that Detective Mims was a policeman,.....
The gravamen of attempted murder is the specific intent to kill, not simply to inflict great bodily harm. State v. Cavazos, 610 So.2d 127, 128 (La.1992); State v. Chisolm, 95-2028, p. 7 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195. The State must prove that the defendant had the specific intent to kill and committed an overt act tending toward the accomplishment of that goal. La. R.S. 14:27; La. R.S. 14:30.1; State v. Whins, 96-0699, p. 3 (La.App. 4 Cir. 4/9/97), 692 So.2d 1350, 1353, writ denied, 97-1227 (La.11/7/97), 703 So.2d 1263. Therefore, the trial court's instruction was erroneous to the extent that it informed the jury that it could convict the defendant if it found that he specifically intended to inflict great bodily harm upon Det. Mims.
However, the defendant concedes, and the record reflects, that trial counsel for defendant failed to object to the jury charge. La.C.Cr.P. art. 801 provides that "[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." Appellate review of such an error also normally be precluded by the failure to make a contemporaneous objection as required by La.C.Cr.P. art. 841(A); State v. Chisolm, supra.
Despite the general rule, in State v. Williamson, 389 So.2d 1328 (La.1980), the Supreme Court reviewed an erroneous jury instruction even though the defendant failed to object at trial. The court stated:
[T]he asserted error involves the very definition of the crime of which the defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process.
389 So.2d at 1331.
But, in State v. Thomas, 427 So.2d 428 (La.1982), on rehearing, the Supreme Court cautioned:

Williamson should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence.
427 So.2d at 435.
In Thomas, the trial court erroneously instructed the jury on the basis of a superseded first degree murder statute. The Supreme Court rejected the notion that there exists in Louisiana criminal jurisprudence a so-called "plain error rule," authorizing appellate review of the record for plain errors even in the absence of a contemporaneous objection.[1] 427 So.2d at 432-33. In dicta, the court noted that, even if it had reviewed the claim of error, no relief was warranted because the defendant failed to demonstrate that he was substantially prejudiced by the irregularity.
Also, in another post-Williamson decision, State v. Belgard, 410 So.2d 720 (La.1982), the trial court gave an instruction to the jury from which it could have inferred that proof of specific intent to "create" great bodily harm was sufficient to convict the defendant of attempted second degree murder. The *596 Supreme Court refused to review the defendant's claim of error as to the giving of that jury instruction because he failed to object at trial. 410 So.2d at 720.
Nevertheless, in State v. Cavazos, supra, the Supreme Court cited Williamson for the proposition that:
A substantial probability that jurors may have convicted the defendant under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in the absence of a contemporaneous objection.
610 So.2d at 128.
In State v. Chisolm, supra, as in the instant case, the trial court erroneously charged the jury that to convict the defendant it had to find that the defendant had a specific intent to kill or inflict great bodily harm, but, also as in the instant case, the defendant failed to object. This court cited Thomas, supra, noting the general rule that the failure to object precludes appellate review, but, nevertheless, finding that "there is ample basis for concluding that the erroneous jury charge on specific intent was harmless.... The guilty verdict of attempted second degree murder was surely unattributable to the erroneous charge ...." 95-2028 at p. 7, 691 So.2d at 255.
Considering the above jurisprudence, we refuse to consider the claim of error on the ground that the defendant failed to object to the jury instruction. Further we also conclude this assignment is without merit under the harmless error analysis.
"Before a reviewing court may declare an error harmless beyond a reasonable doubt it must find that the verdict `actually rendered in this trial was surely unattributable to the error.'" (emphasis in original). State v. Vale, 96-2953, 97-0158, p. 2 (La.9/19/97), 699 So.2d 876, 877, citing State v. Code, 627 So.2d 1373, 1384-85 (La.1993) (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
The focus of the harmless error analysis is the defendant's specific intent to kill. Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desires the prescribed consequences to follow from his act or failure to act. La. R.S. 14:10(1); State v. Whins, 96-0699, pgs. 3-4 (La.App. 4 Cir. 4/9/97), 692 So.2d 1350, 1353, writ denied, 97-1227 (La.11/7/97), 703 So.2d 1263. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Maxie, 93-2158, p. 11 (La.4/10/95), 653 So.2d 526, 532.
As previously discussed, in State v. Chisolm, supra, the court considered the facts of the casethat the defendant ambushed the victim at night and shot him eleven times at very close rangeand concluded: "[t]he guilty verdict of attempted second degree murder was surely unattributable to the erroneous charge ...." 95-2028 at p. 7, 691 So.2d at 255.
While the issue on harmless error analysis is not one of sufficiency of the evidence, cases weighing the sufficiency of the evidence necessary to sustain convictions for attempted first degree murder, attempted second degree murder and attempted manslaughter, all of which require proof of a specific intent to kill, are somewhat helpful.
In State v. Hall, 606 So.2d 972 (La.App. 3 Cir.1992), writ denied, 93-0051 (La.11/11/94), 644 So.2d 385, the defendant claimed he had been attempting to shoot the person standing next to the victim, not the victim, who he also wounded. In affirming the defendant's two convictions for attempted second degree murder, the court held that, by shooting at the person standing next to the victim, the defendant must have actively desired the consequences of his actions, i.e., hitting the victim. The court stated:
The law does not require that the intent to kill be of the specific victim, but only that the defendant had the intent to kill someone.
606 So.2d at 976.
In State v. Holley, 528 So.2d 752 (La.App. 1 Cir.1988), writ denied, 536 So.2d 1213 (La.1989), the court affirmed the defendant's convictions for attempted first degree murder and attempted manslaughter occurring *597 when the defendant shot at two police officers. The defendant fired a single shot at one officer as police attempted to enter a motel room, and subsequently fired a single shot at that same officer and another officer.
In State v. Odom, 511 So.2d 1214 (La.App. 2 Cir.1987), writ denied, 515 So.2d 446 (La. 1987), a truck followed the victim as he drove away from a laundromat, and one of the occupants fired three shots which struck the rear window and trunk of the victim's car. The court considered that the victim was not a stranger to the defendant, and that the defendant had "intentionally fired a deadly weapon at the victim's car." The court found that the evidence "minimally" supported a determination by the jury that the defendant specifically intended to kill the victim, sustaining a conviction for attempted second degree murder.
In State v. Coleman, 432 So.2d 323 (La. App. 1 Cir.1983), the court affirmed a conviction for attempted manslaughter. The defendant was walking with three friends when a car with four youths passed by, and the two groups exchanged words. The defendant drew a gun and fired six shots at the car, three of which struck the vehicle, and one of those struck the victim. The court found that, based on these facts, "the jury could conclude that defendant deliberately aimed toward the car's occupants with an intent to kill." 432 So.2d at 325.
In the instant case, the defendant had murdered an individual earlier in the evening. When Dets. Mims and Zenon, accompanied by Lofton Fairchild, pulled up in front of the residence where the defendant was sitting on the front steps, the defendant immediately pulled a gun and began firing at the three men. The defendant was fifteen to twenty feet away from the unmarked police car when he started firing, and the evidence indicates that Det. Mims was closest to the defendant. The defendant fired four to six shots at the officers and Fairchild, although some were fired as he ran away.
The evidence presented in the instant case would be sufficient for a rational trier of fact to conclude that the defendant had the specific intent to kill Det. Mims when he fired on Mims, Mims' partner, and Fairchild. That is, when the defendant fired his gun at Det. Mims, from a distance of fifteen to twenty feet away, he intended the natural consequences of his actions, i.e., striking Det. Mims with a bullet or bullets and killing him. Considering all of the facts and circumstances, we conclude that the conviction was surely unattributable to the error and, thus, the error was harmless.
Accordingly, for the reasons expressed above we affirm the defendant's convictions of one count of second degree murder and one count of attempted first degree murder; the sentence of life imprisonment without benefit of parole, probation or suspension of sentence as to the second degree murder conviction is affirmed; the sentence as to the attempted murder conviction is amended to remove the restrictions prohibiting probation, parole and suspension of sentence and as amended, affirmed.
CONVICTIONS AFFIRMED. SENTENCES AMENDED AND AS AMENDED AFFIRMED.
NOTES
[1] The court noted that such an error was not an error patent, i.e., an error discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. 427 So.2d at 432-33; La.C.Cr.P. art. 920.