# Supreme Court of Louisiana

The Per Curiams handed down on the **27th day of May, 2016**, are as follows:


**PER CURIAM**:


2015-C -1508      RICHARD BRYANT LOGAN AND CARRIE LOGAN v. DR. DONALD PAUL SCHWAB, JR. (Parish of Terrebonne)

For the reasons assigned, the judgment of the district court denying the motion for new trial is reversed.  Plaintiffs' motion for new trial is granted.  The case is remanded to the district court for further proceedings.

JOHNSON, C.J., concurs and assigns reasons.
WEIMER, J., dissents and assigns reasons.
CLARK, J., dissents with reasons.
CRICHTON, J., dissents with reasons.

05/27/16

SUPREME COURT OF LOUISIANA

NO. 2015-C-1508

RICHARD BRYANT LOGAN AND CARRIE LOGAN

VERSUS

DR. DONALD PAUL SCHWAB, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

PER CURIAM

It is well settled that a new trial should be ordered when the court is convinced by an examination of the facts that the judgment would result in a miscarriage of justice. *Lamb v. Lamb*, 430 So. 2d 51, 53 (La. 1983). Having reviewed the record and considering the briefs and oral argument of the parties, we are convinced that the trial judge's actions resulted in a  miscarriage of justice. Therefore, considering the unique and narrow facts presented, we conclude a new trial must be granted.

**DECREE**

For the reasons assigned, the judgment of the district court denying the motion for new trial is reversed. Plaintiffs' motion for new trial is granted. The case is remanded to the district court for further proceedings.

05/27/16

SUPREME COURT OF LOUISIANA

NO. 2015-C-1508

RICHARD BRYANT LOGAN AND CARRIE LOGAN

VERSUS

DR. DONALD PAUL SCHWAB, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

**JOHNSON, Chief Justice, concurs.**

I agree with the decision of this court, finding plaintiffs are entitled to a new trial. I write separately to emphasize the unprofessional and inappropriate nature of the trial judge's behavior in this case.

In my view, it is undisputed that Judge Ellender engaged in bizarre and disturbing behavior during the jury trial of this matter such that the jury's verdict cannot be allowed to stand. According to plaintiffs, Judge Ellender failed to preside over the trial from his position on the bench, but rather roamed around the entirety of the courtroom during much of the trial. Judge Ellender would stop and look out of the windows in the courtroom while plaintiffs' counsel was examining witnesses. Judge Ellender continuously moved around the courtroom, sitting in various chairs, and, inexplicably, sat in the jury box with the jurors while eating candy - all during witnesses' testimony. The record also contains uncontroverted testimony from the plaintiff that Judge Ellender greeted the defense medical expert, defendant's medical partner, with a handshake and embrace in front of the jury. Additionally, although neither counsel asked plaintiffs' medical expert, Dr. Leo Murphy, any questions regarding his fees and expenses during the trial, after Dr. Murphy was released Judge

1

Ellender took it upon himself to question plaintiffs' counsel about the costs paid to Dr. Murphy in the presence of the jury.

I find Judge Ellender's actions unacceptable. La. C.C.P. art. 1791 provides: "The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." Judge Ellender's insidious actions of leaving the bench, wandering around the courtroom, looking out the windows, eating candy and otherwise failing to pay attention to the proceedings communicated to the jury in a non-verbal way his opinion that the trial was not serious and could be treated as a joke.

The inappropriateness of Judge Ellender's behavior is further emphasized by La. C.E. art. 614. That provision permits the court to call and question witnesses, however when the case is to be decided by a jury, the court's participation in the trial is *expressly limited* by subsection D: "In a jury trial, the court may not call or examine a witness, except upon the express consent of all parties, which consent shall not be requested within the hearing of the jury." Although Judge Ellender did not question Dr. Murphy directly, his questioning of plaintiffs' counsel regarding Dr. Murphy's fees and costs while the jury was present violated the spirit and intent of the rule.

The cumulative effect of Judge Ellender's behavior and actions can only be viewed as resulting in prejudice to the plaintiffs' case. Not only were Judge Ellender's actions a continuous source of distraction for the jury, I find his systematic, intentional and disruptive behavior clearly undermined the seriousness of the court proceedings and the legitimacy of plaintiffs' case.

I find Judge Ellender's actions are even more disturbing considering this court

previously disciplined him twice for his conduct both on and off the bench.[1] Under the facts and circumstances of this case, a new trial must be granted.

---

[1] *In re Ellender*, 09-0736 (La. 7/1/09), 16 So. 3d 351 (Judge Ellender suspended for thirty days without pay due to his failure to treat a pro se petitioner's application for protection from domestic abuse seriously, and acting in a condescending and demeaning manner towards her); *In re Ellender*, 2004-2123 (La. 12/13/04), 889 So. 2d 225 (Judge Ellender suspended for one year, without pay, with six months of that suspension conditionally deferred as a result of his conduct in appearing in public, at Halloween party, in costume with afro wig, black face makeup, and prison jumpsuit).

05/27/16

# SUPREME COURT OF LOUISIANA

## NO. 2015-C-1508

## RICHARD BRYANT LOGAN AND CARRIE LOGAN

## VERSUS

## DR. DONALD PAUL SCHWAB, JR.

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT,
PARISH OF TERREBONNE*

**WEIMER, J.**, dissenting.

The plaintiffs allege that the trial court judge behaved inappropriately during trial by joining the jury in the jury box where he sat and proceeded to eat candy and by physically embracing the surgical partner of the defense's medical expert in front of the jury. Assuming these allegations are accurate, at a bare minimum, the judge's conduct would be an affront to the solemnity appropriate to a trial.

However, as a reviewing court, we cannot and should not simply assume that these allegations are accurate, let alone make the additional leap that such allegations justify granting a new trial. It has been aptly stated that "[a]n extraordinary claim requires extraordinary proof."[1] Similarly, the law requires that, before we overturn the work of a jury, comprised of citizens who take an oath to judge fairly and impartially, we must examine whether the judge has improperly held sway over the jury. See La. C.C.P. art. 1791 ("The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the

---

[1] Marcello Truzzi, On the Extraordinary: An Attempt at Clarification, Zetetic Scholar, Vol. 1, No. 1, p. 11 (1978).

evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.").

This examination required by law must be based on evidence, not conjecture, and begins with the trial record. In the trial record, there is nothing to substantiate the plaintiffs' allegations of inappropriate behavior. Most significantly, there is not even an objection in the trial record for any of the allegations leveled against the judge. This court has previously found that the lack of a contemporaneous objection about a judge's conduct reveals a lack of prejudice. See **State v. Shaw**, 06-2467, p. 23 n.8 (La. 11/27/07), 969 So.2d 1233, 1247 n.8 (evaluating the claim that a judge improperly inquired into whether a defendant at a criminal trial had considered whether to testify, this court observed: "In fact, the record is devoid of a contemporaneous objection to the trial court's questions, indicating that, at the time it occurred, the inquiry was not deemed by either the defendant or his counsel to be improper or coercive.").

Casting aside the principles of review just described, in determining the work of the jury should be discarded, the majority has relied on an affidavit by a single juror who served as the jury foreperson. To be clear, in the unique setting of a motion for new trial, it is appropriate to consider evidence outside the trial record if it is properly admitted into evidence. As previously mentioned, the trial record is the main evidence for evaluating whether to grant a new trial. In extraordinary cases, the trial record may be the starting point, rather than the ending point, when looking for evidence of a judge improperly influencing the jury. However, the law also contains the counsel of great care and caution in resorting to a juror's impressions. Specifically and directly, La. C.E. art. 606(B) limits a juror's testimony to "whether any outside influence was improperly brought to bear upon any juror" and prohibits

2

testimony as to the "effect of anything upon his or any other juror's mind or emotions as influencing him" or "concerning his mental processes" as to reaching a verdict.

Although the plaintiffs' counsel has argued that the jury foreperson told him "it was abundantly obvious that [the judge] had a bias in favor of the [defendant]," the foreperson's affidavit did not state that the trial judge was biased in favor of the defendant. Because the affidavit lacks testimony as to "whether any outside influence was improperly brought to bear upon any juror" pursuant to La. C.E. art. 606(B), the affidavit would ordinarily be inadmissible for purposes of seeking a new trial. The affidavit essentially contains the impressions prohibited by La. C.E. art. 606(B) as to the "effect of anything upon his or any other juror's mind or emotions as influencing him" or "concerning his mental processes" when reaching a verdict.[2]

Just as problematic as the affidavit itself is the route the majority takes to consider it. The majority absolves the plaintiffs for failing to contemporaneously object to the trial judge's behavior. However, the majority considers the content of the affidavit by reasoning that the defendant failed to contemporaneously object to its introduction into evidence. Therefore, even if unintentional, it appears the

---

[2] In **Tanner v. United States**, 483 U.S. 107, 120-21 (1987), the Supreme Court, interpreting the analogous federal rule of evidence, held this prohibition barred consideration of evidence that jurors used drugs and alcohol during the trial. The Court stated:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. See, e.g., **Government of Virgin Islands v. Nicholas**, [759 F.2d] at 1081 (one year and eight months after verdict rendered, juror alleged that hearing difficulties affected his understanding of the evidence). Moreover, full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople would all be undermined by a barrage of postverdict scrutiny of juror conduct. See Note, *Public Disclosures of Jury Deliberations*, 96 Harv.L.Rev. 886, 888-892 (1983).

majority employs a double standard when applying the contemporaneous objection requirement.[3]

As this court previously recognized, there are two rationales behind the contemporaneous objection rule: "(1) to put the trial judge on notice of the alleged irregularity so that he may cure the problem and (2) to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection." **State v. Thomas**, 427 So.2d 428, 433 (La. 1982) (on reh'g). A party should not be entitled to stash an objection in his back pocket and sit on it, only to pull it out after an adverse judgement. Now, however, the majority's willingness to overlook the plaintiffs' failure to contemporaneously object discourages curing problems during trial and simultaneously casts a cloud of uncertainty over jury verdicts.

I hasten to add that the jury's work is not the only effort that has been negated by the slender reed of an affidavit of questionable admissibility offered at a questionable second attempt at a new trial. The appellate court applied well-established standards of review to the evidence adduced at trial and found no error in rejecting the plaintiffs' case on the merits.

---

[3] Relying on the lack of a contemporaneous objection by the defendant is all the more problematic because of the awkward manner the plaintiffs employed to introduce the otherwise inadmissable affidavit. The plaintiffs did not seek to introduce the affidavit when first presenting the plaintiffs' motion for new trial. Instead, the affidavit was attached to a supplemental memorandum filed on the day of the hearing. From the hearing transcript, it does not appear the affidavit was formally introduced at the new trial hearing. Essentially, the affidavit was in the record, but had not been introduced into evidence. Subsequent to the denial of the initial motion for new trial, the plaintiffs filed a motion to recuse the trial judge, which he coupled with another motion for new trial of questionable efficacy. Although the affidavit was later offered into evidence in connection with the plaintiffs' subsequent motion for rehearing/recusal, at that time, the defendant's counsel mistakenly believed the affidavit had already been introduced into evidence. Given the unique circumstances, it would seem that the defendant's failure to object to the affidavit should be more easily forgiven than the plaintiffs' failure to contemporaneously object to the behavior of the trial judge. Regardless, the motion to recuse the original trial judge was heard and rejected as was the second and procedurally questionable motion for a new trial.

4

In conclusion, I disagree that a new trial is merited. I reiterate that I found the plaintiffs' allegations about the trial court judge, when those allegations were initially presented, to be troubling. However, based on the lack of a contemporaneous objection coupled with insufficient evidence inside or outside the trial record to substantiate the allegations, I respectfully dissent from the majority's decision to invalidate the work of the jury by granting a new trial.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1508

RICHARD BRYANT LOGAN AND CARRIE LOGAN

VERSUS

DR. DONALD PAUL SCHWAB, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

CLARK, J., dissenting

While I do not condone the trial judge's behavior if the allegations are true, I find proof of those allegations to be lacking, certainly below that which we should require in order to overturn a jury verdict. I, therefore, dissent.

SUPREME COURT OF LOUISIANA

NO. 2015-C-1508

RICHARD BRYANT LOGAN & CARRIE LOGAN

VERSUS

DR. DONALD PAUL SCHWAB, JR.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF TERREBONNE

**CRICHTON, J., dissents and assigns reasons**

I respectfully dissent from the majority's finding that plaintiffs are entitled to a new trial in this case. Although the majority finds that there is sufficient evidence in the record establishing that the trial judge's actions during the jury trial of this matter resulted in a miscarriage of justice, in my view, the trial record is devoid of any specific evidence documenting the trial judge's alleged behavior. Counsel for both parties conceded that they personally did not witness much of the alleged behavior, as it was "behind" them in a large courtroom. As a result, the only "evidence" presented at the post-verdict motion hearing is set forth by the jury foreperson in her arguably inadmissible affidavit[1] and the self-serving testimony of one of the plaintiffs. Plaintiffs' counsel has also offered little explanation as to why he did not issue subpoenas or compel testimony of others who were in the courtroom during trial to testify regarding the judge's behavior (such as the bailiff, deputy clerk of court, court reporter, or even Judge Ellender), when the trial judge's alleged actions are paramount to the plaintiffs' claims of prejudice

---

[1] As Justice Weimer observes in note 3 of his dissent, the presence of this affidavit in the record is curious and likely improper. It was not officially admitted into evidence, but was attached to a supplemental memorandum on the day of the hearing on the motion for new trial, and was not objected to by defense counsel, who stated at oral argument he was "asleep." Although it was later introduced at another hearing, defense counsel, apparently still "asleep," again failed to object, mistakenly believing the affidavit was already in the record. Nevertheless, I find that La. C.E. art. 606(B) prohibits consideration of this affidavit.

resulting from his behavior. Consequently, in my view, there is insufficient evidence to warrant a second bite at the apple.[2]

Despite the scant evidence to actually prove judicial misconduct in this case, it is important to emphasize the gravity of such allegations against the trial judge. The judiciary is charged with the duty of "upholding the integrity and independence of the judiciary," which requires that a judge "personally observe[,] the high standards of conduct so that the integrity and independence of the judiciary may be preserved." Code of Judicial Conduct, Canon 1(A). A judge shall also "maintain order and decorum in judicial proceedings." Code of Judicial Conduct Canon 3(A)(2). *See also State ex rel. Attorney General v. Lazarus*, 39 La.Ann. 142, 1 So.361, 376 (1887) ("[a]ll those who minister in the temple of justice, from the highest to the lowest, should be above reproach and suspicion. None should serve at its altar whose conduct is at variance with his obligations."). The conduct of the trial judge in this case, as alleged or imagined by the plaintiffs, is in direct violation of a judge's most sacred charge – to maintain decorum and preserve the integrity and independence of the judiciary. I do not look upon a violation such as this lightly, particularly when, as in this case, it is not a first-time offense.[3] However, and though the cumulative effect of Judge Ellender's conduct is troublesome, I fear that this judge's institutional history of untoward behavior has perhaps influenced the majority's decision today, which should instead be focused on the evidence presented in this record in this case. In my view, the unsupported allegations of improper conduct in this instance do not warrant the reversal of a jury verdict and remand for a new trial.

---

[2] Furthermore, despite a jury verdict already rendered in his favor, the doctor who is accused of malpractice must now sit through yet another trial, necessitating valuable time away from his patients and his profession.

[3] For examples of previous unacceptable and obnoxious behavior for which this judge was disciplined, see *In re Ellender*, 09-0736 (La. 7/1/09), 16 So.3d 351 and *In Re Ellender*, 04-2123 (La. 12/13/04), 889 So.2d 225.