WEIMER, J.[1]
| T This matter comes before the court on recommendation of the Judiciary Commission of Louisiana (Commission) that Judge Timothy C. Ellender be publicly censured for violation of La. Const, art. V, § 25(C) and Canons 1, 2 A, and 3 A(3). The Commission found Judge Ellender exhibited improper temperament and demeanor, as well as impatience and discourtesy, to a person who appeared before him on March 2, 2007, for a hearing in a case alleging domestic abuse.
FACTUAL BACKGROUND
On February 16, 2007, Eula Warren filed, in proper person, a petition for protection from abuse against her husband, Charles Warren. Eula Smith Warren v. Charles Warren, Sr., No. 150580 on the docket of the Thirty-Second Judicial District Court for the Parish of Terrebonne. The petition was also filed on behalf of the couple’s minor daughters. When the case was assigned to Judge Ellender, he signed a temporary restraining order (TRO) prohibiting Mr. Warren from abusing, harassing, stalking, following, or threatening Mrs. Warren and their children. Judge Ellender further ordered Mr. Warren to show cause on March 2, 2007, why the TRO |2and other relief requested should not be converted to protective orders pursuant to Louisiana’s Protection from Family Violence Act, LSA-R.S. 46:2121, et seq.
On March 2, 2007, Mr. and Mrs. Warren were both present in proper person and were questioned by Judge Ellender. After instructing Mrs. Warren to speak into the microphone, Judge Ellender asked both of them if they wanted a divorce. When they *353 replied that they presently did want to be divorced, Judge Ellender questioned why they had not filed for a divorce rather than “go through this c-r-a-p.” He then instructed the couple how they could file for a divorce in the office of the clerk of court without having to retain an attorney.
When Judge Ellender asked Mrs. Warren what she had wanted to achieve with the TRO, she replied that she just wanted her husband to leave her and her children alone. After admonishing Mrs. Warren that they were her husband’s children too, Judge Ellender asked her about her claim that by threatening her and their children Mr. Warren was abusive to them.
The hearing ended with the following dialogue:
THE COURT: All right. It says: “On Sunday, February 11th, we were in Subway eating.”
Can’t you find a better place to eat than that?
“Before we went to the parade. My daughter, Sabrina, two, was acting up in the store and didn’t want to sit down to eat. He told Sabrina if she didn’t stop he was going to bring her to the bathroom and it was going to be a bloody mess.”
True?
MR. WARREN: No, sir. I told her that I was going to take her in the bathroom and whip her booty and make her booty bleed.
THE COURT: That’s good. Good for you. “When we got to the parade route and park[ed], he started on me. He told me he wished that he — wished that we would ... [Reave, and that he wanted a divorce. He was mad because my uncle and his brother asked him if he beat me. He threatened to beat me three or four times a day. He told me that if I didn’t look at him when he was talking he would punch me in the face. At one time he threatened to throw his coffee in my face. My girls were |asitting in the back seat and they had started to fight over some toy. He told them they needed to stop.”
Judge Ellender’s ruling on the show cause hearing was: “Heat, big smoke, but no fire. Dismissed. You want a divorce, get a divorce. You’re not getting a TRO. See y’all later.”
DISCIPLINARY PROCEEDINGS
A month later, on April 9, 2007, the Office of Special Counsel (OSC) received a complaint from Mrs. Warren complaining of the demeaning and condescending behavior by Judge Ellender during the show cause hearing.'[2] Mrs. Warren remarked, “I understand now why women don’t go to the courts for help/protection because that judge treated me just like my husband does. I feel like the judge gave permission to my husband to abuse his wife and children.”
After considering Judge Ellender’s response to the complaint, the Commission authorized an investigation and by letter dated February 20, 2008, notified Judge Ellender of same.
On September 29, 2008, the Commission filed Formal Charge # 0297 against Judge Ellender, alleging that he engaged in ethical misconduct by exhibiting improper temperament and demeanor and failing to act with patience, dignity, and courtesy during the hearing in the Warren matter. The Commission alleged that Judge Ellen-der’s conduct violated the following canons *354 of the Code of Judicial Conduct: Canon 1 (a judge shall uphold the integrity and independence of the judiciary); Canon 2 A (a judge shall respect and comply with the law); and Canon 3 A(3) (a judge shall be patient, dignified, and courteous to litigants and others with whom the judge deals |4in an official capacity). The Commission further alleged that Judge Ellen-der engaged in willful misconduct relating to his official duty and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, in violation of La. Const, art. V, § 25(C).
Judge Ellender answered the formal charge and admitted he was “short,” “curt,” “discourteous,” “impatient,” and “dismissive” to the Warrens; however, he denied his conduct rose to the level of a violation of the Code of Judicial Conduct or the Louisiana Constitution.

Joint Stipulation:

On January 6, 2009, Judge Ellender and the OSC jointly filed a “Statement of Stipulated Uncontested Material Facts, Stipulated Conclusions of Law, and Stipulated Recommendation of Discipline.” The stipulation incorporated the underlying facts, as well as Judge Ellender’s response to the formal charge. The parties also stipulated that Judge Ellender’s words and actions during the show cause hearing “caused Mrs. Warren to view in a negative manner the judicial system.”
Based on the stipulated facts, the parties agreed that Judge Ellender violated the Code of Judicial Conduct, for which misconduct the Commission should recommend a public censure and payment of costs. Specifically, the parties stipulated that Judge Ellender violated Canon 3 A(3) because he failed to be patient, dignified, and courteous to a litigant with whom he dealt in an official capacity. Judge Ellen-der did not stipulate that he violated Canons 1 or 2 A of the Code of Judicial Conduct, nor that he violated La. Const, art. V, § 25(C).[3]
|sThe Commission voted to accept the stipulated facts and legal conclusions presented by the parties, and to dispense with a hearing, subject to further questioning of Judge Ellender at a Commission meeting, which occurred on February 13, 2009. During this appearance, Judge Ellender admitted that he did not conduct the show cause hearing in the Warren case appropriately under the circumstances. He testified that this was an isolated incident caused by his tendency “to try to go too rapidly in court.” Judge Ellender pledged that he will “slow down” in the future so this type of behavior would not occur again. Judge Ellender further explained:
All I can say is I had a bad day. I had hundreds of people in my courtroom. I forgot my hearing aids like I did this morning. And it was — it was just a bad day. And I apologize. It was wrong. I should not have been rude to her, and I should have let her go on.
Additionally, Judge Ellender testified:
Well, I just want to apologize and tell you it won’t happen again. Everybody has faults. And one of mine in the past has been to try to go too rapidly in court I’ve found. And after this happened, I’ve talked to some of the lawyers that practice before me and discussed with some of the other judges, and I’ve come to realize that sometimes I may in the past have sacrificed some issues because *355 of wanting to get the docket clear, especially when my courtroom is full. And it’s not going to happen again.
Regarding some of the specific comments he made to Mr. and Mrs. Warren during the show cause hearing, one Commission member asked Judge Ellender what he meant when he asked the Warrens why they could not find a better place to eat than Subway. Judge Ellender denied that he was trying to belittle anyone by making the “Subway comment,” but claimed that “it was kind of an inside joke” among his court staff, who know that he “always make[s] fun of Subway food.” Regarding his apparent approval of Mr. Warren’s making his two-year old daughter’s “booty bleed” by stating “that’s good, good for you,” Judge Ellender testified that he believed Mr. Warren was speaking colloquially and that he was only going to spank his daughter. | fiJudge Ellender further stated that he personally believes in corporal punishment, and “I should have got more specific with him and asked him, well, are you meaning you’re going to really make it bleed or just spank her. I believe in correction, but not abuse. And that’s the reason why I said that.” Judge Ellender, conceded, however, that he did not make his point very well. Finally, with regard to his comment “heat, big smoke but no fire,” Judge Ellender explained that he was trying to convey that he believed Mr. Warren when he denied his wife’s allegations of abuse, and that Mrs. Warren had not carried her burden of proof.
RECOMMENDATION OF THE COMMISSION
Following the February proceedings, the Commission filed its recommendation in this court on March 31, 2009.

Conclusions of Fact and Law:

The Commission concluded the formal charge was proved by clear and convincing evidence; Judge Ellender had violated Canons 1, 2 A, and 3 A(3) of the Code of Judicial Conduct. The Commission also found Judge Ellender had violated La. Const, art. V, § 25(C) by his conduct as alleged in the formal charge. The conduct was public and, according to his own testimony, the people who filled his courtroom on the relevant day witnessed his lack of sensitivity. Thus, his rude behavior brought his judicial office into disrepute.
Because the facts were stipulated, the sole issue presented to the Commission was the appropriate measure of discipline. The Commission noted two Louisiana judges have been disciplined for violations of Canon 3 A(3). In In re: Best, 98-0122 (La.10/20/98), 719 So.2d 432, the judge physically grabbed a juvenile defendant and remarked he should be put upside down in a garbage can. For this and other violations of the Code arising out of other incidents, Judge Best was publicly 17censured. In In re: Bowers, 98-1735 (La.12/1/98), 721 So.2d 875, the judge used profane and inappropriate language in several different cases. For this pattern of abusive and discourteous behavior in the courtroom, the majority of this court publicly censured Judge Bowers.
Comparing Judge Ellender’s single incident of inappropriate demeanor to these two cases, the Commission noted that although Judge Ellender’s conduct was egregious, it was confined to one incident. The Commission concluded Judge Ellen-der’s demeanor violation “fell somewhere in between the conduct of Judge Best and Judge Bowers, each of whom was publicly censured.”

Recommendation of Discipline:

A significant factor in deciding on an appropriate recommendation of discipline *356 for a judge is his career as a judge and his past record, if any, with the Commission. Judge Ellender was first elected in 1982 and he has been reelected thereafter five times, including most recently in October 2008, for a term of office commencing January 1, 2009.
Judge Ellender has a prior record of both public and private discipline. In February 2008, Judge Ellender received a letter of admonishment from the Commission in File 07-5519 for engaging in impermissible ex parte communications and for conducting a constructive contempt proceeding without having afforded the defendant adequate legal notice.
In December 2004, Judge Ellender was suspended for one year without pay for appearing in public at a Halloween party dressed in a costume consisting of an Afro wig, black face makeup, and orange prison jumpsuit with handcuffs. In re: Ellender, 04-2123 (La.12/13/04), 889 So.2d 225. This court found Judge Ellender’s conduct violated Canons 1 and 2 A of the Code of Judicial Conduct, which require | fudges to personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved and to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Six months of the one-year suspension would be deferred if Judge Ellender attended racial sensitivity training, which he did in January 2005.
In turning to the question of what sanctions to recommend in the instant matter, the Commission evaluated Judge Ellen-der’s conduct in light of the factors set forth in In re: Chaisson, 549 So.2d 259, 266 (La.1989).
“Considering whether the misconduct is an isolated instance or evidenced a pattern of conduct; [and] the nature, extent and frequency of occurrence of the acts of misconduct,” the Commission found Judge El-lender was disciplined previously by the Louisiana Supreme Court, and in 2008, he was privately counseled. “Considering whether the misconduct occurred in or out of the courtroom; [and] whether the misconduct occurred in the judge’s official capacity or in his private life,” the Commission found Judge Ellender’s misconduct occurred with respect to his official judicial duties. “Considering whether the judge has acknowledged or recognized that the acts occurred,” the Commission found Judge Ellender has acknowledged the facts, as alleged, and he has admitted that his actions were wrong and he will try to “slow down” to avoid a recurrence of rude and inappropriate behavior from the bench. “Considering whether the judge has evidenced an effort to change or modify his conduct,” the Commission found Judge Ellender’s reaction to the formal charge and his cooperation during the process of the Commission proceedings suggest that he will try to modify his conduct in the future. “Considering the length of service on the bench,” the Commission found Judge Ellender was elected to the bench in 1982, and he was a seasoned judge when the conduct that led to the stipulation occurred. | ^‘Considering whether there have been prior complaints about this judge; [and] the effect the misconduct has upon the integrity of and respect for the judiciary” the Commission found prior misconduct by Judge Ellender was significant, and both the prior misconduct and the present case have had negative impact upon the public perception of the judiciary. Finally, “considering the extent to which the judge exploited his position to satisfy his personal desires,” the Commission found while the misconduct charged does not evidence an attempt by Judge Ellen-der to exploit his position, it demonstrates *357 serious insensitivity toward persons who may be subject to spousal abuse.
Based on these considerations, the Commission recommended that Judge Ellender be publicly censured and that he be ordered to reimburse and pay to the Commission $185.50 in hard costs.[4]
DISCUSSION
This court is vested with exclusive original jurisdiction in judicial disciplinary proceedings by La. Const, art. 5, § 25(C), which provides, in pertinent part:
On recommendation of the judiciary commission, the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would constitute a felony, or conviction of a felony.[5]
| 10This court makes determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Judiciary Commission. In re: Quirk, 97-1143 pp. 3-4 (La.12/12/97), 705 So.2d 172, 176.
In addition to the substantive grounds for disciplinary action listed in the Louisiana Constitution, this court, in accordance with its supervisory authority over all lower courts, has adopted the Code of Judicial Conduct, effective January 1,1976, and amended July 8, 1996. The Code of Judicial Conduct is binding on all judges, and violations of the Canons contained therein may serve as a basis for the disciplinary action provided for by La. Const. art. V, § 25(C). In re: Quirk, 97-1143 at 4, 705 So.2d at 176.
In the instant matter, Judge Ellen-der stipulated that he violated Canon 3 A(3), which provides, in pertinent part: “A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity.” The Commission accepted this conclusion of. law after Judge Ellender’s appearance before the Commission members.
Additionally, the Commission found that Judge Ellender’s actions violated Canon 1 of the Code of Judicial Conduct because his actions demonstrated failure on his part to “participate in establishing, maintaining and enforcing, and ... [his failure to personally observe] high standards of conduct so that the integrity and independence of the judiciary may be preserved.” Further, Judge Ellender did not dispute the fact that his actions violated Canon 2 A because his actions failed to “promote public confidence in the integrity ... of the judiciary.” Finally, the Commission con- *358 eluded these violations of the Canons constituted a violation of La. l^Const. art. V, § 25(C) as alleged in the formal charge. At the hearing before the Judiciary Commission, Judge Ellender acknowledged these violations.
We agree with the Commission’s findings of fact and conclusions of law for the following reasons.
The Code of Judicial Conduct requires a judge to show patience, dignity, and courtesy toward litigants and other persons in the courtroom. See Canon 3 A(3). Judges are called upon to render difficult decisions in sensitive and emotional matters. Being in court is a common occurrence for judges, but for litigants, especially pro se litigants, a courtroom appearance can be an immensely difficult experience. Litigants appear before judges to have them disputes resolved. Judges serve the public, in part, by setting an example in how to resolve these disputes in a patient, dignified, and courteous manner. If a judge acts belligerently, those before the judge believe belligerence is acceptable. Judges have an opportunity to teach by example and demonstrate those attributes which all should strive to possess.
Judges ai’e tasked with balancing often competing considerations on the scales of justice. The obligation of a judge to be patient, dignified, and courteous is not inconsistent with affording a judge discretion to be appropriately decisive, forceful, and stern so as to maintain order and decorum in the courtroom. Often a judge’s patience is tested when simultaneously confronted with crowded dockets to be managed and countless difficult decisions to be made. Litigants occasionally lash out at the judge if their side does not prevail, inappropriately casting aspersions on the judge. However, judges must strive to be patient in the face of these challenges.
In donning the judicial robe, judges are not suddenly cloaked with faultlessness. Thus, judges cannot be subjected to discipline merely because someone mistakes decisiveness, forcefulness, or sternness for a lack of patience, dignity, or | i2courtesy. Nevertheless, this court has cautioned that “[wjhile a judge may be forceful and stern, he or she must remain respectful and in control of his or her temper — hostile, demeaning or humiliating language is never warranted.” In re: Bowers, 98-1735 at 14, 721 So.2d at 884. In the instant case, the record contains the audio recording of the Warren proceeding. It is clear from the recording that Judge Ellender was not out of control; he did not lose him temper. However, it is equally clear that the parties did not say anything that could be interpreted as grounds for provoking an inappropriate response on the part of the judge, such as the behavior for which Judge Ellender now apologizes.
Judge Ellender has acknowledged his behavior did not satisfy requirements set forth in the Code of Judicial Conduct. We note the Judiciary Commission, which had the advantage of witnessing his testimony, found that Judge Ellender was contrite about this incident and that he has pledged to modify his behavior by taking more time and not attempting to rush through matters. He acknowledged his mistake and fully cooperated with the Judiciary Commission.
Additionally, Judge Ellender acknowledged that his past misconduct should be taken into account under the Chiasson factors, supra, but urges that the past incident and the instant case involve completely different behavior. The past incident provoked press coverage and sensationalism, which were not present in this occurrence. Although this matter did not receive media attention, as did the previous *359 action on the judge’s part, the incident occurred in a crowded courtroom and had a direct effect on the litigant herself. The prior incident for which he was sanctioned is distinguishable from this incident in that the prior incident occurred off the bench. However, the current misconduct is more disturbing since it occurred in the | iScourtroom during the discharge of judicial duties. Both incidents demonstrate a lack of sensitivity that resulted in judicial misconduct.
Unlike the Boivers and Best cases, which involved numerous charges, but only one appearance before the Judiciary Commission, the instant decision represents Judge Ellender’s third disciplinary sanction. Although this one in-court incidence is distinguishable from the multiple instances evidenced in the Bowers and Best matters, we find it most troubling that Judge Ellender is again before the Judiciary Commission and this court.
Further, Judge Ellender suggested at the outset of the Warren hearing that the pleading alleging domestic abuse was inconsequential.[6] He also suggested approval of the infliction of severe corporal punishment and acknowledged he did not appropriately address the father’s statement about whipping his child. In a matter which alleges domestic violence, these suggestions are disturbing. The lack of patience exhibited in this matter prevented a full consideration of the legitimacy of the allegations in the pleading, especially considering some of the complaints in the pleading were not addressed before the matter was summarily dismissed. There was a potential risk of serious harm stemming from this judicial misconduct in that the complainant was seeking protective relief from threatened violence in a domestic matter. Mrs. Warren appeared before Judge Ellender, unrepresented by counsel, asking the court for protection based on allegations of domestic abuse. The record is clear that Judge Ellender not only failed to treat this matter seriously, but he also acted in a condescending and demeaning manner toward Mrs. Warren and treated her |14with a lack of patience. While such behavior should not be tolerated with respect to any litigant, or attorney, the impact on domestic abuse litigants, and others who allege a need for the court’s protection, can be devastating.
Balanced against the inappropriate behavior is Judge Ellender’s many years of judicial service with but one private admonition for his action in a judicial capacity. To his credit, Judge Ellender has not attempted to diminish the effect his behavior had on Mrs. Warren; he conceded that her outlook on the judicial system was adversely affected by his misconduct. He has not only stipulated to the facts that are the substance of her complaint, but he has apologized in these proceedings.
Finally, we are constrained to caution that the result in this matter not be taken out of context. Not every perceived discourtesy by a judge toward an attorney, a litigant, or a witness will warrant sanctions, or even formal charges. As noted in In re: Daniels, 340 So.2d 301, 308 (La.1976), “We do not mean to imply that we are setting out rules for courtroom decorum, for we realize that the personality and individuality of each judge necessarily reflect in his conduct of judicial proceed *360 ings before him.” The result we reach herein is based on a totality of the circumstances.
Taking all of the factors into consideration, we conclude that a thirty-day suspension is appropriate. Additionally, it is ordered that Judge Ellender attend training designed to assist judges in addressing domestic violence cases.
DECREE
Accordingly, it is ordered that Judge Timothy C. Ellender of the Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana, be and he is hereby suspended for thirty days without pay for violating Canons 1, 2 A, and 3 A(3) of the Code of Judicial Conduct, and Article V, § 25(C) of the Louisiana Constitution of 1974. It is further ordered that Judge Ellender reimburse the Louisiana Judiciary 1^Commission $185.50, for costs incurred during the prosecution and investigation of this case. Additionally, Judge Ellender shall enroll in and complete instruction on addressing domestic violence cases.
JOHNSON, J., concurs and assigns reasons.
VICTORY, J., dissents and assigns reasons.

. Retired Judge Philip Ciaccio, assigned as Justice ad hoc, sitting for Justice Chet D. Traylor, now retired.

. The Commission noted in its recommendation that such behavior is "apparent” from listening to the audio tape of the court proceeding in question. The audio recording was introduced into the record as OSC Exhibit 7.

. The parties pretermitted these stipulations as "unnecessary to resolve this matter” in light of Judge Ellender's admission that he violated Canon 3 A(3). However, during his appearance before the Commission on February 13, 2009, Judge Ellender admitted to violating Canons 1 and 2 A.

. Following the filing of the Commission's recommendation, Judge Ellender and the OSC filed a joint motion to waive briefing and oral argument and requesting that this court consider the case based on the one-volume record. This court denied the motion and oral argument was held on May 6, 2009.

. According to the Louisiana Constitution, and as a check and balance on the authority of the supreme court, this court must await a recommendation from the Judiciary Commission before discipline can be imposed on a judge. The Judiciary Commission is constitutionally established and is comprised of nine members-including judges, lawyers, and citizens not associated with the legal profession-who are appointed to serve four-year terms. The Judiciary Commission fields complaints and can hold hearings to determine if a recommendation of judicial discipline is warranted. Following a Judiciary Commission recommendation, this court can impose discipline.

. But see LSA-R.S. 46:2131 which discusses the purpose of domestic abuse assistance and recognizes "the complex legal and social problems created by domestic violence!,] • • ■ problems of protecting and assisting the victims of domestic abuse!,] ... the intent of the legislature to provide a civil remedy for domestic violence which will afford the victim immediate and easily accessible protection!, and communication of] the attitude that violent behavior is not excused or tolerated.”