# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #046

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinion handed down on the **15th day of October, 2025** is as follows:

**BY Guidry, J.:**

*2025-O-00320*     *IN RE: JUDGE DONALD "CHICK" FORET TWENTY-FOURTH JUDICIAL DISTRICT COURT PARISH OF JEFFERSON STATE OF LOUISIANA*

SUSPENSION IMPOSED. SEE OPINION.

**SUPREME COURT OF LOUISIANA**

**No. 2025-O-00320**

**IN RE: JUDGE DONALD "CHICK" FORET**
**TWENTY-FOURTH JUDICIAL DISTRICT COURT**
**PARISH OF JEFFERSON**
**STATE OF LOUISIANA**

Judiciary Commission of Louisiana

**Guidry, J.**

This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana that Judge Donald "Chick" Foret be disciplined for exhibiting inappropriate judicial demeanor and for failing to self-recuse in a case.

**FACTUAL BACKGROUND**

Judge Foret was elected to Division "H" of the of the 24th Judicial District Court for the Parish of Jefferson in November 2020. He took office on January 4, 2021. After being on the bench for a little over a year, the Commission received two complaints and a media report that prompted the following investigations.

*State v. Monterroso*

The first investigation was based on an anonymous complaint filed in May 2022. The complainant reported Judge Foret's conduct in connection with proceedings in a second-degree murder trial that was held in March 2022. The jury trial in that case was slated to last five days, but by the end of the third day, both sides rested. Assistant District Attorney Kellie Rish then requested a table to publish evidence to the jury. The request made Judge Foret angry, and he loudly voiced his disapproval regarding the absence of the table to ADA Rish, who had not requested

the table in advance, and to his minute clerk, Jessica Tuminello, who became visibly upset and immediately left the courtroom.[1]

Once a table was delivered to the courtroom and the evidence published to the jury, Judge Foret dismissed the jurors for the day and directed them to return for closing arguments at 9 a.m. the next morning. The murder victim's family was also told to arrive at that time. The following morning, however, the jurors arrived early, around 8:30 a.m., so Judge Foret elected to begin closing arguments early, despite having been told that the victim's family were on their way. The victim's family had waited seven years for the trial but were unable to attend any of the proceedings due to being sequestered. The family's only opportunity to hear what transpired during the trial was during closing arguments. By failing to wait for their arrival, the family missed a small portion of the prosecution's closing arguments.[2]

Meanwhile, upon being informed of the judge's display of temper regarding the absence of a table to publish evidence to the jury, Deputy Chief Judge Lee Faulkner called Judge Foret to arrange a meeting to discuss Judge Foret's conduct. During the phone call, which Judge Foret took at the desk of his administrative assistant using the speakerphone feature of her desk phone, Judge Foret raised his voice and used profane language that was overheard by court staff, including his minute clerk.

*Senner v. Federated National Insurance Company*

The second investigation stemmed from a complaint filed by defense attorney James Prather in July 2022. Mr. Prather reported two incidents that occurred during

---

[1] While Judge Foret's angry protest regarding the absence of the table is undisputed, there was some dispute regarding Judge Foret's exact statement and whether the statement included profanity.

[2] The trial transcript for that day reveals that some other matters were addressed before closing arguments began, so the family members missed approximately seven minutes of the closing arguments. It was acknowledged that none of the family complained about missing the initial minutes of the closing arguments.

the litigation of a homeowner's insurance claim in the fall of 2021. The first incident occurred in October 2021 and involved a comment by Judge Foret wherein he indicated to counsel that he was generally predisposed against motions for summary judgment and motions in limine. Judge Foret explained, "I think everybody should have their opportunity to present their evidence. I have done some but if you come with a summary judgment, you're probably going to lose. If you come with a motion to limit testimony, you're probably going to lose because I think everything should come in."

The second incident occurred in November 2021. After a pre-trial hearing, Judge Foret left the courtroom, but counsel remained in the courtroom to discuss jury charges. A short time later, the judge returned to the courtroom and inquired about the settlement posture of the case. Upon being informed of the respective offers made by each side, Judge Foret advised plaintiffs' counsel to tell Mr. Prather to "go f--- himself" if he did not raise his settlement offer.

*Anderson v. Dean*

The last investigation was based on a media report. On July 26, 2022, the *Times Picayune* published an article regarding the circumstances leading up to Judge Foret's recusal in a class action lawsuit as reported in the Louisiana Fifth Circuit Court of Appeal's opinion in Anderson v. Dean, 22-233 (La. App. 5th Cir. 7/25/22), 346 So. 3d 356. The *Anderson* case was the lead case of several lawsuits filed on behalf of residents of various nursing homes in the New Orleans area who were evacuated to a warehouse in Independence, Louisiana in the wake of Hurricane Ida. The high-profile litigation was allotted to Judge Foret, and because the proposed class of plaintiffs was composed of people who were generally elderly and infirm, time was of the essence. Several different attorneys and law firms represented the plaintiffs, who numbered over 800.

On May 4, 2022, Judge Foret held a status conference to discuss motions and scheduling issues for the litigation. The status conference was scheduled to begin at one p.m., but Judge Foret began the conference 30 minutes early. The first few hours of the status conference were conducted "on the record" with a court reporter present to record the proceeding, but the court reporter had to leave prior to the completion of the conference due to childcare issues. It was after the court reporter left that Judge Foret *sua sponte* questioned Suzette Bagneris, an attorney for the plaintiffs, regarding her business relationship with another attorney who had no role in the *Anderson* litigation. Specifically, Judge Foret asked Ms. Bagneris if the attorney was her law partner. Ms. Bagneris denied the existence of a partnership between her and the attorney and informed Judge Foret that her husband, Emile Bagneris, was her law partner. She explained that she had a joint venture with the attorney for the purpose of pursuing hurricane insurance claims unrelated to the nursing home litigation, but not a partnership.

Despite her denials, Judge Foret continued to question the nature of Ms. Bagneris' business relationship with the attorney. Judge Foret then referred to the attorney as "a piece of s---"[3] and indicated that if the attorney and Ms. Bagneris were law partners, he could not be fair to her and might have to recuse himself. Another attorney for the plaintiffs then vouched for Ms. Bagneris and assured Judge Foret that the attorney was not her law partner. As a result of Judge Foret's comments, Ms. Bagneris took steps to dissolve her joint venture with the attorney immediately following the status conference.

Upon hearing Judge Foret's remarks to Ms. Bagneris, Stephen Miles, an attorney representing the defendant, Bob Dean, disclosed at the status conference that he also had a professional relationship with the attorney in question, whom he

---

[3] The record presents differing accounts of when Judge Foret uttered this phrase and whether he said it more than once, but all, including Judge Foret, agreed that he stated the phrase in reference to the attorney in question.

4

was defending in a car accident case. In response to Mr. Miles' disclosure, Judge Foret informed the conference participants that the accident in question had occurred in the front yard of his home.[4] He then showed those present a video of the scene of the accident that he had on his cellphone. During this discussion, Judge Foret shared additional negative comments concerning the attorney that further displayed his strong animosity for the attorney.

Mr. Miles subsequently filed a motion to recuse Judge Foret on behalf of Mr. Dean. Judge Foret, in turn, requested that an ad hoc judge be appointed to hear the motion. Following a contradictory hearing, the ad hoc judge denied the motion, finding "there was no evidence to reflect any substantial and objective bias towards any of the parties or attorneys involved" and that the parties all "admitted they believed the trial judge could be fair." Mr. Dean appealed the ad hoc judge's ruling on the motion to recuse.

The fifth circuit granted writs, reversed the ruling of the ad hoc judge, and granted the motion to recuse Judge Foret. Anderson, 22-233 at p. 20, 346 So. 3d at 370. Judge Gravois, writing for the court, observed that the ad hoc judge "may have erroneously applied the incorrect legal standard" in deciding the motion to recuse, noting that the "newly enacted" La. C.C.P. art. 151(B)[5] states "[a] judge of any trial or appellate court shall also be recused when there exists a substantial and objective ***basis*** that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner." Anderson, 22-233 at p. 10, 346 So. 3d at 364 (emphasis added). Considering the comments made by Judge Foret

---

[4] The attorney in question crashed his vehicle into a tree in Judge Foret's front yard. The attorney's sister was in the vehicle at the time and sustained serious injuries for which she filed a lawsuit against the attorney and his automobile insurer.

[5] In 2021, the Louisiana Legislature amended and re-enacted the Code of Civil Procedure articles addressing recusal of judges in civil cases, including Article 151. The new articles became effective on August 1, 2021, nine months before the May 4, 2022 status conference.

under the current standard provided in La. C.C.P. art. 151(B), the fifth circuit explained:

> [T]his Motion to Recuse arose because of Judge Foret's spontaneous comments in open court that he may have to recuse himself. These *sua sponte* statements raised the question of the judge's ability to be impartial in the minds of all observers. This is evidenced not only by the testimony of the attorneys filing the Motion to Recuse, but also by the testimony of Ms. Bagneris who, though stating that she believed in Judge Foret's ability to try the case impartially, nevertheless undertook measures to dissolve her business arrangements with [the attorney in question] in response to Judge Foret's comments. While Ms. Bagneris may have [believed] in the judge's ability to remain fair and impartial, it is apparent she also believed that others looking at the case may have doubts. Additionally, the animus publicly displayed by Judge Foret in crude and expletive language towards a non-party, [the attorney in question], could cause a reasonable observer to wonder to whom such animus may be next directed, particularly anyone who had any type of relationship with [the attorney].
>
> Upon *de novo* review, and under the particular facts and circumstances of this case, we find that Judge Foret's comments created a substantial and objective basis that would reasonably be expected to prevent him from conducting any aspect of the cause in a fair and impartial manner. A judge is required to be impartial. A judge on the bench questioning his own ability to try the case impartially as Judge Foret apparently did cannot help but undermine public confidence in the judiciary and raised doubts where previously there were none. Subsequent assurances to the contrary are like trying to close the barn door after the horse has bolted.

Anderson, 22-233 at pp. 18-19, 346 So. 3d at 369.

*Disciplinary Proceedings*

After investigating the two complaints and the circumstances of the media report, the Commission issued a Notice of Hearing outlining the above facts and alleging that Judge Foret's conduct appeared to have violated several Canons of the Code of Judicial Conduct. The Notice of Hearing also alleged that Judge Foret engaged in willful misconduct relating to his official duty, in violation of La. Const. art. V, § 25(C). Judge Foret filed an answer generally denying the allegations of the Notice of Hearing "as stated."

6

Proceedings before a hearing officer,[6] Judge John C. Campbell (retired), were held on May 13-14, 2024. Judge Foret and several fact witnesses testified and several items of documentary evidence, including the affidavits, sworn statements, and depositions of additional witnesses, were introduced into evidence at the hearing. The hearing officer later filed a report with the Commission containing proposed findings of fact and conclusions of law. In addition to finding that the Office of Special Counsel proved the allegations of the Notice of Hearing with clear and convincing evidence, the hearing officer noted that in the opening statement made by Judge Foret's counsel, as well as in his own sworn statement and testimony given at the hearing, "Judge Foret largely admitted to all the conduct at issue." Hence, the hearing officer found that Judge Foret:

(1) displayed an inappropriate temperament and demeanor, failed to maintain order and decorum, manifested or created an appearance of bias, failed to be patient and courteous to others, including the family of a victim, and failed to recuse himself after creating a substantial and objective basis to reasonably question his ability to be impartial; and

(2) by engaging in such conduct, violated Canons 1, 2, 2A, 3A(1), 3A(2), 3A(3), 3A(4), and 3C of the Code of Judicial Conduct, as well as Article V, Section 25(C) of the Louisiana Constitution (1974).

Thereafter, Judge Foret appeared for questioning before the Commission. Following a *de novo* review of the hearing officer's proposed findings of fact and conclusions of law and based on the hearing before it, the Commission found that Judge Foret's conduct violated the Code of Judicial Conduct and La. Const. art. V, § 25(C) and recommended that he be publicly censured. The matter was then set on the docket for oral arguments before this court pursuant to Supreme Court Rule XXIII, § 14.

---

[6] See Supreme Court Rule XXIII, §29.

7

## DISCUSSION

Although this court is vested with exclusive jurisdiction in judicial disciplinary proceedings, see La. Const. art. V, § 25, this court is not equipped to receive evidence. Thus, evidence in judicial disciplinary proceedings is received at the hearing before the hearing officer and in the proceedings before the Commission.[7] La. Sup.Ct. Rule XXIII, § 29; In re Benge, 09-1617, p. 27 (La. 11/6/09), 24 So. 3d 822, 838-39. Nonetheless, this court has the power to make determinations of fact based on the evidence in the record and is not bound by, nor required to give any weight to, the findings and recommendations of the Commission. Benge, 09-1617 at pp. 26-27, 24 So. 3d at 838.

A charge against a judge must be proved by clear and convincing evidence before this court can impose discipline. Pursuant to our supervisory authority over all lower courts, this court adopted the Code of Judicial Conduct, effective January 1, 1976, and amended July 8, 1996, which supplements the Louisiana Constitution's substantive grounds for disciplinary action against a judge. Violations of the Canons of the Code of Judicial Conduct, without more, may serve as the basis for disciplinary action as provided by La. Const. art. V, § 25(C). In re Free, 16-0434, p. 2 (La. 6/29/16), 199 So. 3d 571, 574

---

[7] In connection with its recommendation of discipline, the Commission filed a motion to seal Volume 19 of the record. This volume consists of portions of the transcript of the recusal hearing. At the time the motion to recuse was filed in the district court, counsel for the moving party, Bob Dean, requested the testimony at the hearing be placed under seal because of the "sensitivity of what's going to be discussed at this hearing." The district court granted the motion to seal, and this order remains in effect.

We acknowledge there is a strong societal interest in public trials, and the public has a constitutional right of access to court records. See Copeland v. Copeland, 06-1023, p. 2 (La. 6/2/06), 930 So. 2d 940, 941. However, for purposes of this judicial disciplinary proceeding, the salient facts developed at the underlying recusal hearing have been established through other public sources, including the detailed summary of the testimony in court of appeal's opinion in Anderson v. Dean, 22-233 (La. App. 5th Cir. 7/25/22), 346 So. 3d 356, and the sworn testimony in the non-confidential portions of this disciplinary record. The transcript of the hearing adds nothing of substance to the proceedings before us that has not been established through other means.

Accordingly, in order to effectuate the district court's order sealing the record of the recusal hearing, we will grant the Commission's motion to seal Volume 19 of the record.

It should be noted that most of the facts at issue in this case are not disputed. Prior to the proceedings before the Commission, Judge Foret contested the hearing officer's findings that he used profanity when addressing his minute clerk in connection with the table incident in the *Monterroso* case; that he exhibited bias against granting motions for summary judgment and motions in limine in the *Senner* case; that he acted aggressively and inappropriately while questioning Ms. Bagneris regarding her professional relationship with an attorney in the *Anderson* case; and that he was required to self-recuse in the *Anderson* case due to his remarks regarding the attorney. The Commission, nonetheless, adopted all of the hearing officer's findings of fact and conclusions of law[8] regarding Judge Foret's demeanor and duty to recuse and made additional findings of fact and conclusions of law based on its *de novo* review of the record and Judge Foret's appearance before that body.

The matter now comes before this court. In oral arguments and in his brief filed with this court, Judge Foret appears to have abandoned any dispute as to the factual findings with respect to his demeanor in the *Monterroso, Senner,* and *Anderson* cases. In fact, except as it relates to the question of Judge Foret's recusal, he basically admits the salient facts regarding the impropriety of the demeanor he displayed in the referenced judicial proceedings. Further, having reviewed all the evidence and the transcripts of the proceedings before the hearing officer and the Commission, we find the record supports, by clear and convincing evidence, the following factual findings and violations with respect to Judge Foret's demeanor.

*Judicial Demeanor*

Judge Foret lost his temper regarding the request for a table during the *Monterroso* trial. His display of temper reflected a lack of courtesy and patience and is illustrative of a theme in Judge Foret's conduct – difficulty balancing the need for

---

[8] The Commission explained that it made certain textual revisions with brackets and ellipses to the wording and relabeled and reordered the hearing officer's findings and conclusions.

efficiency and eliminating disruption with recognizing that the individuals responsible for making a courtroom operate well are human, and therefore fallible. He further used profanity when addressing his minute clerk, Ms. Tuminello,[9] regarding the request for the table and when discussing the incident with Deputy Chief Judge Faulkner. Judge Foret likewise displayed an inappropriate temperament and demeanor and gave the impression that he was not a neutral arbiter during an informal settlement discussion in the *Senner* case when he used an expletive to describe how plaintiff's counsel should respond to defense counsel's settlement offer.

In addition to the use of profanity, the animosity and derogatory nature of Judge Foret's comments about an attorney in the *Anderson* case were entirely inappropriate. The allegations Judge Foret made against the attorney (who had nothing to do with the *Anderson* case) were just that: allegations that had not been investigated or adjudicated. As a judge, Judge Foret should have recognized the power of his position and his words, particularly the negative effect they may have on the attorney's reputation, when made in the presence of a large group of lawyers. Although none of the above exchanges were "on the record," Judge Foret was still operating in his official capacity as a judge.

All of the foregoing incidents constituted a failure to observe a high standard of conduct so as to preserve the integrity and independence of the judiciary; a failure to avoid impropriety in all activities; a failure to maintain order and decorum in judicial proceedings; and a failure to be patient, dignified, and courteous to litigants,

---

[9] In his testimony before the hearing officer, Judge Foret stated, "I don't think I cursed Ms. Tuminello, you know. ... As I said in my [sworn] statement, if I cursed, I'm not going to say I didn't do it." He later added, "I don't think I said it, but it sounds like something I would say. Jess, where's the 'F-ing' table." The Commission found there was "clear and convincing evidence that Judge Foret used profanity in relation to Ms. Tuminello when he became angry after the table was requested in *Monterosso*." As previously mentioned, in the proceedings before this court, Judge Foret no longer disputes any of the factual findings with respect to his judicial demeanor.

jurors, witnesses, lawyers, and others with whom Judge Foret dealt with in his official capacity, in violation of Canons 1, 2, 2A, 3A(2), and 3A(3).

Judge Foret's decision to start proceedings earlier than the time he previously indicated they would start in the *Monterroso* case demonstrated his failure to recognize the family's right to be present for closing arguments. He further wrongly blamed the attorneys and the family for the family's failure to be present when closing arguments began based on his erroneous assumption that the attorneys would have "extrapolated" his instruction to counsel to arrive at 8:30 a.m. as a directive to advise the family to arrive at that time as well. Judge Foret's refusal to accommodate the victim's family by starting court at the time he had announced and after being told that the family were on their way constituted a failure to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, in violation of Canons 1 and 3A(3).

Although Judge Foret granted motions for summary judgment and to limit testimony, his comments to counsel during the *Senner* case indicated a predisposition against them and violated Canons 1, 2, 2A, and 3A(4) because his comments created an appearance of bias or that he would rule in a biased manner, even if he did not.

Judge Foret's conduct during the lengthy status conference in the *Anderson* case, including his *sua sponte* questioning of Ms. Bagneris' professional relationship with an attorney hours into the conference and sharing video of the scene of the attorney's motor vehicle accident while continuing to disparage his character in a crude manner, constituted a failure to maintain and personally observe high standards of conduct, a failure to avoid impropriety and the appearance of impropriety, and a failure to maintain order and decorum in the proceedings, in violation of Canons 1, 2, 2A, and 3A(2).

The numerous instances of improper judicial demeanor exhibited by Judge Foret, including losing his temper, using profanity, exhibiting a lack of patience, decorum, and respect, constituted willful misconduct relating to his official duty, in violation of La. Const. art. V, § 25(C). As previously explained by this court:

> "Willful," which is an adjective, is defined in Black's Law Dictionary (11th ed. 2019) as "[v]oluntary and intentional, but not necessarily malicious," and "[a] voluntary act becomes willful, in law, only when it involves conscious wrong or evil purpose on the part of the actor, or *at least inexcusable carelessness, whether the act is right or wrong* (emphasis added)." "The term *willful* is stronger than *voluntary* or *intentional*." *Id*. In addition, "willfulness" is defined as "[t]he quality, state, or condition of acting purposely or by design; deliberateness; intention;" "[it] does not necessarily imply malice, but it involves more than just knowledge;" and, "[t]he voluntary, intentional violation or disregard of a known legal duty." *Id*. The Merriam Webster Dictionary defines "willful" as "obstinately and often perversely self-willed" and "done deliberately."

In re Denton, 21-01801, p. 25 (La. 3/25/22), 339 So. 3d 574, 590-91. Hence, in the context of La. Const. art. V, § 25(C), the word "willful" does not require the misconduct to be done with the intent to bring about a negative consequence or to be done in bad faith. Denton, 21-01801 at p. 27, 339 So. 3d at 592. Accordingly, no matter how merit worthy or misguided the motivation that led to the above violations, it does not absolve Judge Foret of the consequences for his acts of improper judicial demeanor proven by the record before us.

Which leaves for our consideration whether Judge Foret's refusal to self-recuse following his disclosure and comments regarding an attorney in the *Anderson* case resulted in any violation of the Canons of the Code for Judicial Conduct.

*Recusal*

The Commission found recusal of Judge Foret was required by La. C.C.P. art. 151(B), which provides: "[a] judge of any trial or appellate court shall also be recused when there exists a substantial and objective basis that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner." Believing this language required Judge Foret to self-recuse, the

12

Commission further found Judge Foret violated Canon 3(C) of the Code of Judicial Conduct, which provides: "[a] judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned and shall disqualify himself or herself in a proceeding in which disqualification is required by law or applicable Supreme Court rule. In all other instances, a judge should not recuse himself or herself." Judge Foret counters that the Commission's interpretation of La. C.C.P. art. 151(B) places an unreasonable burden on judges faced with a potential violation of Canon 3(C) of the Code of Judicial Conduct if they choose to refer a recusal motion to this court. Judge Foret admits that he used improper language and displayed inappropriate judicial demeanor. However, he challenges the Commission's finding that he was required to self-recuse in the *Anderson* case as a matter of law. Rather, he maintains that his referral of the recusal motion to this court for appointment of an ad hoc judge was proper and in compliance with the procedure set forth in La. C.C.P. art. 154.

Judge Foret did not violate Canon 3(C) by declining to self-recuse and referring the recusal motion to an ad hoc judge for determination. Louisiana Code of Civil Procedure article 151 sets forth the grounds for recusal of judges, while La. C.C.P. art. 154 sets forth the procedure. "A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusal under Article 151." La. C.C.P. art. 154(A). "If the motion to recuse sets forth a ground for recusal under Article 151, not later than seven days after the judge's receipt of the motion from the clerk of court, the judge shall *either* recuse himself or make a written request to the supreme court for the appointment of an ad hoc judge as provided in Article 155." La. C.C.P. art. 154(B) (emphasis added). Thus, the recusal procedure sets forth two valid options for a judge facing possible recusal: either self-recuse *or* request the appointment of an ad hoc judge. If an ad hoc is

13

requested, this court "shall appoint an ad hoc judge to hear the motion to recuse." La. C.C.P. art. 155.

After making intemperate and disparaging comments about an attorney, who was not an attorney in the case before him, Judge Foret chose not to self-recuse. He has consistently maintained his belief that he "could be fair with [Ms. Bagneris] and Mr. Miles and everyone else. [His] beef is with [the attorney], not with anybody in this case." All the witnesses who testified regarding Judge Foret's disclosure at the status conference in the *Anderson* case, including Judge Foret, Ms. Bagneris, and Mr. Miles, acknowledged that Judge Foret was respectful and did not display any animus towards either Ms. Bagneris or Mr. Miles; rather, Judge Foret's display of animus was solely towards the attorney. Mr. Miles, the defense attorney, filed a motion to recuse Judge Foret. Upon receiving the motion, and before acting again in the case, Judge Foret promptly requested an ad hoc judge be appointed to hear the motion. The ad hoc judge denied the motion to recuse finding "no evidence to reflect any substantial and objective ***bias*** towards any of the parties or attorneys involved." The court of appeal disagreed, finding "a substantial and objective ***basis*** that would reasonably be expected to prevent the judge from conducting any aspect of the cause in a fair and impartial manner" existed, and ordered Judge Foret's recusal.

Judge Foret is being disciplined for his intemperate words and actions. That includes his words and actions surrounding the discussion of an attorney in the *Anderson* case. Considering the particular facts and circumstances in this matter, specifically that a motion to recuse was filed in the *Anderson* case quite soon after Judge Foret's disclosure and that he promptly referred the recusal motion to this court for appointment of an ad hoc judge to hear and decide the motion pursuant to La. C.C.P. art. 154(B), we find no violation of Canon 3C occurred.

14

*Disciplinary Action*

Having found that Judge Foret violated the Canons of the Code of Judicial Conduct by virtue of his multiple displays of improper judicial demeanor, we are left with the task of deciding the appropriate measure of discipline for those violations. In determining the appropriate sanction, we are mindful of the primary purpose of the Code of Judicial Conduct, which is to protect the public rather than simply to discipline judges. In re Gremillion, 16-0054, p. 16 (La. 6/29/16) 204 So. 3d 183, 193. The factors discussed in In re Chaisson, 549 So. 2d 259 (La. 1989) are generally used in considering the appropriate discipline to impose in non-removal cases. In re King, 03-1412, p. 19 (La. 10/21/03), 857 So. 2d 432, 446. In Chaisson, this court set forth the following non-exclusive list of factors, labeled (a) through (j), that a court may consider in imposing discipline on a judge:

**(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct and (b) the nature, extent and frequency of occurrence of the acts of misconduct**: Judge Foret insists that his misconduct was limited to "three isolated, unrelated incidents" during "a three-month period in Spring of 2022, [and] it has not occurred since." While the misconduct occurred in connection with three separate cases litigated in late 2021 and early 2022, each matter involved multiple instances of improper conduct. In connection with *Monterroso*, Judge Foret lost his temper after the table request and subsequently with Judge Faulker, and he started closing arguments early instead of waiting for the victim's family. He made two sets of improper comments in connection with the *Senner* case. And in the *Anderson* case, he spoke disparagingly of an attorney and inappropriately showed videos of the car accident.

Perhaps more significant is the nature and extent of the misconduct. Judge Foret became frustrated when the prosecution in the *Monterroso* case requested a table for evidence because the need for it was not discussed at the "dress rehearsal"

15

the week prior, and he did not want to waste time.  Instead of simply telling the prosecution that he thought they should have been better prepared, he yelled and cursed in a complete overreaction that brought a staff member to tears.  When a judicial colleague then tried to tell him that someone had complained about his conduct, instead of reflecting on how he may have been in the wrong, Judge Foret once again lost his temper and yelled and cursed in earshot of his staff members.  His tendency to act out of impatience and frustration led to another overreaction that overrode the basic respect owed to the family members of the murder victim in the *Monterroso* case, when he insisted on starting early over the objections of the prosecutor, who had informed him the family members were minutes away, because he mistakenly believed they were late.

Judge Foret spoke in a crude manner during the informal settlement discussions in *Senner* and made unjudicial comments that could give the impression he was biased.  In *Anderson*, his personal animus towards a lawyer not involved in the case led him to crudely disparage the lawyer in front of other lawyers on the case.

All of this "demonstrates a pattern of injudicious behavior and gives the impression that Respondent either lacks a fundamental understanding regarding appropriate judicial temperament and demeanor or believes that maintaining appropriate judicial temperament and demeanor is unnecessary." Free, 16-0434 at p. 51, 199 So. 3d at 601-02.  In his defense, Judge Foret notes his hard work and dedication, as well as the affidavits submitted in his support.  However, in In re Bowers, 98-1735, p. 11 (La. 12/1/98), 721 So. 2d 875, 881-82, the court acknowledged Judge Bowers' good character and reputation as a hardworking judge but nonetheless stated that "this Court cannot ignore the numerous examples of inappropriate behavior that have been presented.  The record clearly indicates that Judge Bowers' use of foul language and inappropriate threats were not isolated events."

16

**(c) whether the misconduct occurred in or out of the courtroom and (d) whether the misconduct occurred in the judge's official capacity or in his private life**: All of Judge Foret's misconduct occurred while he was acting in his official capacity as a district court judge and most occurred in the courtroom, although not necessarily during an on-the-record proceeding. Even if the jury and/or the general public were not present for Judge Foret's outburst over the table in *Monterroso* or the respective settlement discussions and status conference in *Senner* and *Anderson*, attorneys and court staff are just as entitled to respect and decorum from judicial officers. See In re Elloie, 05-1499, p. 28 (La. 1/19/06), 921 So. 2d 882, 901 ("The concept of 'the public' for purposes of [La. Const. art. V, § 25 (C)] does not encompass only those persons outside of the judicial process. 'The public' also includes lawyers, court personnel, parties involved in litigation and all those people who come into contact with the judiciary."). Further, we note that the news coverage resulting from the Louisiana Fifth Circuit Court of Appeal's opinion that recused Judge Foret brought widespread awareness and public attention to his behavior casting the judicial office into disrepute.

**(e) whether the judge has acknowledged or recognized that the acts occurred and (f) whether the judge has evidenced an effort to change or modify his conduct**: Judge Foret acknowledged that his demeanor and language were improper, and while he appeared at times to take full responsibility for his conduct, he did not acknowledge using profanity with respect to Ms. Tuminello, and did not think it inappropriate to show personal videos of the car accident at the *Anderson* status conference.

To his credit, however, upon learning of the multiple complaints regarding his demeanor, Judge Foret sought to be mentored by retired Judge Dennis Waldron with additional counseling from Father Anthony McGinn, a former president of Jesuit High School in New Orleans. In his brief to this court, he indicated that he continues

17

to meet with Judge Waldron and Fr. McGinn to improve his judicial demeanor. Judge Foret maintains that he is thankful for these disciplinary proceedings because he has "judicially matured" as a result and his demeanor has changed.

However, the Commission was left with concerns about the extent to which he is able to change his "old-school temperament" and understand what constitutes an appropriate judicial demeanor or the necessity of exhibiting one. For example, when Judge Foret appeared before the Commission, the Commission reported he became heated in response to certain questions and appeared as if he was struggling to keep his composure. The fact that this was evident in his appearance before the Commission caused some reservation about his ability to remain patient and dignified with staff and in the courtroom on a daily basis. Additionally, although not at issue in these proceedings, Judge Foret's testimony about putting himself on an "island" with respect to his judicial colleagues, in part because he has "issues" with their testimony in these proceedings, and his ill-advised comment to a former prosecutor about retaliating against the anonymous complainant indicated to the Commission that he still may struggle with acting out of anger.

**(g) the length of service on the bench**: Judge Foret took the bench on January 4, 2021, and was a relatively new judge at the time the conduct at issue occurred in the fall of 2021 and spring of 2022. However, as shown in recent decisions of this court, inexperience will not necessarily shield a new judge from discipline. See In re Rose, 25-00390 (La. 4/23/25), 406 So. 3d 1163 and In re Fiffie, 24-00976 (La. 10/25/24), 395 So. 3d 738.

Before taking office, Judge Foret had a long and varied legal career, having practiced as a prosecutor, criminal defense attorney, and civil litigator over his forty-plus years as a lawyer. Judge Foret asserted that his conduct "can be seen as that of a newly elected judge whose rough and tumble practice of being a criminal prosecutor and defense lawyer for his entire career spilled over briefly into his time

18

on the bench when he admittedly had more lawyer than judge in him." While it is true that Judge Foret had only been on the bench for just about a year at the time, his decades of experience practicing before judges, including retired Judge Waldron, whom Judge Foret greatly admires, should have indicated what kind of behavior is expected and required of judges. Moreover, with respect to profanity, Judge Foret knew when he began appearing on live television[10] that he could not curse on air, and he should have realized that it was equally, if not more, important to not curse in his capacity as a judge.

**(h) whether there have been prior complaints about this judge**: Judge Foret has no reportable history of prior judicial misconduct.

**(i) the effect the misconduct has upon the integrity of and respect for the judiciary**: Judge Foret's actions underlying this matter, especially those in the high-profile class action lawsuit that were the subject of media attention, negatively impacted the integrity of and respect for the judiciary. As pointed out to Judge Foret by citizen members of the Commission, most members of the public view courtrooms as hallowed chambers, so they expect judges to act in a dignified manner, and the use of profanity by judges sends a message that they may not be treated with respect in court. Failing to wait a matter of minutes for the family of a murder victim to arrive in court most certainly leaves a negative impression of the judiciary on those members of the public, even if they never made an official complaint. Losing one's temper and showing a lack of decorum with staff and attorneys also negatively impacts their respect for the judiciary. This matter arose in part from someone who felt it necessary to file an anonymous complaint about Judge Foret's "objectionable behavior and nonjudicial demeanor," which was characterized as "braggadocious and rude," as well as from an attorney who felt "compelled" to file a complaint for

---

[10] Prior to being elected to the bench, Judge Foret served as a legal analyst for WWL-TV in New Orleans.

the first time in thirty years of practice after being "shocked at the lack of decorum and respect shown by Judge Foret." This sentiment of shock at Judge Foret's lack of decorum was echoed by the attorneys in the *Anderson* case.

And **(j) the extent to which the judge exploited his position to satisfy his personal desires**: There is no evidence that Judge Foret exploited his position as a judge to satisfy his own personal desires. At most, some of Judge Foret's conduct appeared to be the result of his frustration or anger when others did not meet his personal standards.

In the underlying proceedings, Judge Foret generally acknowledged all of the sanctionable behavior, although he initially denied that his behavior rose to the level of a violation of the Code of Judicial Conduct. He eventually conceded his behavior, except for the issue of recusal, violated the Code of Judicial Conduct.

## DECREE

Therefore, considering the record, briefs, and oral argument before this court, it is ordered that Judge Donald "Chick" Foret be suspended from the office of Judge, 24th Judicial District Court for the Parish of Jefferson, for thirty days without pay.[11] Judge Foret is further ordered to pay $7,488.67 of the costs incurred in this disciplinary matter to the Judiciary Commission in accordance with Supreme Court Rule XXIII, § 22.

---

[11] See In Re Ellender, 09-0736 (La. 7/1/09), 16 So. 3d 351 (suspended 30 days without pay for exhibiting improper temperament and demeanor and failing to act with patience, dignity, and courtesy during a protective order hearing) and In re Cresap, 06-1242 (La. 10/17/06), 940 So. 2d 624 (suspended 30 days without pay in part for exhibiting an improper temperament and demeanor and speaking in a rude and disparaging manner to counsel).